MATHEW ANDREWS V. STATE

No. 28,650. December 5, 1956.

*Dent, Ford, King & Wickliff,* by *Thos. H. Dent,* Galveston, for appellant.

*Leon Douglas,* State's Attorney, Austin, for the state.

MORRISON, Presiding Judge.

The offense is rape; the punishment, 28 years.

The prosecutrix, a 51-year old widowed laboratory employee who lived alone, testified that she was at home by herself on the night in question when someone knocked on her front door, that she unlatched the screen to identify her caller, and the appellant forced his way inside and demanded money of her with an open knife in his hand. She stated that when she informed him that she had no money he slapped her, instructed her to speak in a low tone of voice, to take off her underclothes and get on the bed. Following this, he had intercourse with her, after threatening her with the knife, and then repeated his demands for money. Finally, the prosecutrix, in an effort to get away from the appellant, offered to go to her neighbor's and try to borrow some money, and the appellant accompanied her. She went to the home of Mary Grimes, who lived next door, with the appellant still armed with the knife right behind her, rushed in, closed the door, and called the police. She described the appellant to the police, and they returned shortly with the appel-

lant, and she identified him; and she was later carried to the hospital for an examination.

Mary Grimes testified that the prosecutrix, her neighbor, came to her front steps on the night in question with the appellant and called to her, telling her that the appellant wanted some money but that she did not have any; that, as the prosecutrix climbed her steps, the appellant told the prosecutrix not to go in the house; and that she "caught her by the arm and pulled her in the house and closed the door."

Detective Landrum of the Galveston Police Department testified that, in response to a radio call, he went immediately and interviewed the prosecutrix and Mrs. Grimes, secured a description from them, and within a short while arrested the appellant, carried him back to the prosecutrix' house, where he was identified by the two women.

Dr. Jose Mayen testified that he examined the prosecutrix in the emergency room of the John Sealy Hospital on the night in question, removed a liquid which he found inside her vagina, analyzed it, and expressed the opinion that it was male sperm and that the prosecutrix had had intercourse.

The appellant's wife testified that he left their home with Dorothy Young, and she, in turn, testified that he remained with her until he was arrested.

The appellant testified that he was with Dorothy Young until he was arrested and that he saw the prosecutrix and Mrs. Grimes for the first time at the police station.

The jury resolved the disputed issue of fact against the appellant, and we find the evidence sufficient to support their verdict.

The only question presented for review in the appellant's brief is Dr. Mayen's qualification as an expert witness. In Silva v. State, 152 Tex. Cr. Rep. 545, 215 S.W. 2d 887, the same question was before this court. The doctor in that case, as Dr. Mayen in this case, was not a licensed physician in Texas. There, we said:

"However, the question of whether or not a witness is sufficiently qualified to express an opinion as an expert on a question involving scientific knowledge is a matter for the court to

determine after the witness has stated the time devoted to the study of that branch of science, his training, and experience."

We now outline Dr. Mayen's training and experience. He received a degree in medicine and a license to practice from the medical school in San Salvador, El Salvador in Central America, in 1952, and came to the United States for the purpose of studying his specialty. He first interned at Mary Hospital in Chicago and then came to John Sealy Hospital, which is connected with the University of Texas Medical School, in 1954, and had at the time he made the examination in question approximately one year more to serve as an interne to finish his residency in obstetrics and gynecology. At the time of the trial, he was serving at Brackenridge Hospital in Austin.

This, we think, was certainly a sufficient showing of competency in his field to be able to testify as to the results of the tests which he ran on the fluid found in the vagina of the prosecutrix. See also Long v. Surls, (Civ. App.), error refused, 275 S.W. 2d 728.

Appellant's contention that Dr. Mayen was engaged in practicing medicine without a license under the Texas law and that any information he received while so doing would be inadmissible under Article 727a, V.A.C.C.P., which prohibits the introduction of evidence acquired in violation of state or Federal law, is overruled.

Finding no reversible error, the judgment of the trial court is affirmed.