**Carol B. PHILLIPS, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 13–00–651–CR.**

Court of Appeals of Texas,
Corpus Christi–Edinburg.

April 24, 2003.

Rehearing Overruled July 28, 2003.

---

**6.** Since our determination of UPRC's third issue is dispositive of the case, we need not address its other issues.

W. Troy Mckinney, Houston, for appellant.

David C. Newell, Asst. Dist. Atty., John F. Healey, Jr., Dist. Atty., Richmond, for appellee.

Before Justices YAÑEZ, RODRIGUEZ and BAIRD.[1]

## OPINION

Opinion by Justice BAIRD (Assigned).

Appellant was charged by information with the misdemeanor offense of sale of an alcoholic beverage to a minor. TEX. ALCO. BEV.CODE ANN. § 106.03(a) (Vernon Supp. 2003). Following a pre-trial suppression hearing, the associate county court at law

1. Former Court of Criminal Appeals Judge Charles F. Baird assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon 1998).

judge granted appellant's motion to suppress. The State appealed that ruling to the county court at law judge who reversed the decision of the associate judge. Appellant subsequently entered a negotiated plea of guilty, and was assessed a fine of $100.00. In a single point of error, appellant challenges the denial of the motion to suppress. We reverse.

### I. The Trial Court.

At the hearing conducted by the associate county court at law judge on the motion to suppress evidence, the following testimony was developed. Shannon Burger was a seventeen year old minor child on the date of the alleged offense. Burger was asked by her aunt, a Texas Alcoholic Beverages Commission (TABC) officer, to enter a liquor licensed premise, and purchase an alcoholic beverage. Burger agreed to assist her aunt, and was instructed to enter the Mustang Lounge in Rosenberg, Texas. Prior to her entrance, Burger did not observe any signs prohibiting minors from entering the premises. Burger further testified that she did not see any such sign in the lounge, but acknowledged a sign could have been posted and she simply did not see it.

Appellant, a bartender at the Mustang Lounge on the date of the alleged offense, testified signs which prohibited the entrance of any person under eighteen years of age were posted at the entrance, and inside the lounge. Appellant testified these signs were posted on the night of the alleged offense, and clearly visible.[2] Appellant admitted selling an alcoholic beverage to Burger without asking for identification. Appellant testified that if a patron appeared to be underage, she would ask for identification, and if the identification

confirmed that the patron was underage, appellant would ask the patron to leave. If the patron refused to leave, appellant would call a "bar back" to escort the patron from the premises.

Daryl Darnell, a TABC enforcement agent, testified he was conducting an undercover operation of the Mustang Lounge on the night of the alleged offense. Darnell testified that Burger's role in the operation was the undercover minor. Darnell escorted Burger into the Mustang Lounge, and saw appellant sell an alcoholic beverage to Burger. Darnell testified he did not see any signs prohibiting persons under eighteen years of age at either the entrance to the lounge, or inside the premises. Darnell acknowledged such signs could have been posted, but he simply did not recall seeing one.

After hearing arguments on the motion, the associate judge took the matter under advisement, and subsequently granted the motion to suppress. The State filed a "Request for Findings of Fact and Conclusions of Law and Notice of Appeal." The associate judge complied with the State's request, and found, *inter alia:* that Burger was seventeen years of age when she entered the Mustang Lounge, a premise licensed for the sale of alcoholic beverages; Burger was accompanied by a TABC agent for the purpose of having Burger attempt to purchase an alcoholic beverage; no sign prohibiting entry to persons under eighteen years of age was posted at the entrance of the lounge; such a sign was posted within the premises in such a manner as to be reasonably likely to come to the attention of intruders; Burger remained on the premises of the lounge even though a sign was posted on the property

---

**2.** On cross-examination, appellant stated she was not positive the signs were posted on the outside of the premises, but maintained her position that the signs were posted inside the premises.

prohibiting entry to persons under eighteen years of age; appellant had a greater right of possession to the establishment than did Burger; appellant had the apparent authority to act on behalf of the owner; neither Burger nor the TABC agent accompanying her were a fire fighter or emergency medical service personnel acting in the lawful discharge of an official duty under exigent circumstances; and, no warrant authorized Burger or the TABC agent to enter the lounge.

The associate judge then made conclusions of law which set forth section 30.05 of the Texas Penal Code which defines the offense of criminal trespass. *See* TEX. PEN. CODE ANN. § 30.05 (Vernon Supp.2003). The conclusions also set forth article 38.23 of the code of criminal procedure, the Texas Exclusionary Rule. *See* TEX.CODE CRIM. PROC. ANN. art. 38.23 (Vernon Supp.2003).

The State then filed a notice of appeal, a request for a *de novo* hearing, and objections to the findings of the associate judge. Specifically, the State objected to the application of section 30.05 and article 38.23 to the instant case, and the failure of the associate judge to include within his findings and conclusions "any of the State's arguments and law which were presented to the Associate Judge." Both the State and appellant submitted briefs to the county court-at-law judge stating their respective positions. The county court-at-law judge granted the State the right of appeal, and overruled the decision of the associate judge. The county court-at-law judge then denied appellant's motion to suppress without conducting a *de novo* hearing, and did not enter findings of fact or conclusions of law. Appellant eventually entered into a plea agreement with the State whereby appellant would plead *nolo contendre* to the offense of sale of an alcoholic beverage to a minor, and the

State would recommend punishment at a fine of $100. The county court-at-law judge followed the punishment recommendation. Appellant filed a proper and timely notice of appeal. TEX.R.APP. P. 25.2(b)(3)(C).

## II. Arguments and Analysis.

### A. Was Burger a Trespasser?

 Appellant contends Burger's presence on the premises of the Mustang Lounge constituted criminal trespass and, therefore, the evidence obtained by Burger should have been suppressed under article 38.23. TEX.CODE CRIM. PROC. ANN. art. 38.23 (Vernon Supp.2003). The threshold issue, therefore, is whether Burger was a trespasser. Section 30.05 provides, in pertinent part:

(a) A person commits an offense if he enters or remains on property, . . . of another without effective consent or he enters or remains in a building of another without effective consent and he:

(1) had notice that the entry was forbidden;

(b) For purposes of this section:

(2) "Notice" means:

(C) a sign or signs posted on the property . . . reasonably likely to come to the attention of intruders, indicating that entry is forbidden;

(c) It is a defense to prosecution under this section that the actor at the time of the offense was a fire fighter or emergency medical services personnel . . . acting in the lawful discharge of an official duty under exigent circumstances.

TEX. PEN.CODE ANN. § 30.05 (Vernon Supp. 2003). In light of the findings of fact and conclusions of law entered by the associate judge, Burger was a trespasser.[3]

---

**3.** The State argues that we should not accept the findings of the associate judge. But as

Despite those findings, the State argues that Burger was entitled to enter the Mustang Lounge because the Texas Alcoholic Beverage Code provides for the use of minors to conduct undercover operations. In support of this argument, the State cites sections 101.04 and 106.05 of the Texas Alcoholic Beverage Code.

Section 101.04 (Consent to Inspection) provides:

> By accepting a license or permit, the holder consents that the commission, an authorized representative of the commission, or a peace officer may enter the licensed premises at any time to conduct an investigation or inspect the premises for the purpose of performing any duty imposed by this code.

TEX. ALCO. BEV.CODE ANN. § 101.04 (Vernon 1995). Clearly, section 101.04 creates an exception to the warrant requirement for a member of the Alcoholic Beverage Commission, an authorized representative of the commission, or a peace officer to enter premises selling alcohol for the purpose of inspection or investigation. *Santikos v. State,* 754 S.W.2d 416, 418 (Tex. App.-Corpus Christi 1988), *aff'd,* 836 S.W.2d 631 (Tex.Crim.App.1992). This type of statutory waiver of Fourth Amendment protections against warrantless searches is well established with respect to certain heavily regulated business enterprises. *Donovan v. Dewey,* 452 U.S. 594, 598–601, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981); *Colonnade Catering Corp. v. United States,* 397 U.S. 72, 75–76, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970) (specifically recognizing power of Congress to impose regulations upon liquor industry permitting reasonable warrantless entries into business establishments). However, this waiver is not unlimited. *Colonnade Catering,* 397 U.S. at 77, 90 S.Ct. 774; *Crosby v. State,* 750 S.W.2d 768 (Tex.Crim. App.1987). Section 101.04 does not authorize any individual to enter the premises; rather, it limits warrantless searches to TABC officers, "an authorized representative of the commission," or peace officers. Clearly, Burger was not a TABC officer. Further, there is no evidence that Burger was a "peace officer" as defined by article 2.12 of the Texas Code of Criminal Procedure. TEX.CODE CRIM. PROC. ANN. art. 2.12 (Vernon Supp.2003). Nor could Burger have been "deputized" in accordance with article 2.14 of the Texas Code of Criminal Procedure. TEX.CODE CRIM. PROC. ANN. art. 2.14 (Vernon 1977).

The only remaining issue is whether Burger was an "authorized representative of the commission." Our independent research has not revealed a single case where this term has been defined. Nor have we found any administrative provision entitling TABC agents to employ minors in undercover activities. The State argues section 106.05 of the Texas Alcoholic Beverage Code provides such authority.

---

noted above, he was the only judge to hear testimony in this case. The county court-at-law judge did not conduct a *de novo* hearing despite the State's request for one. Therefore, the associate judge was in the best position to make findings of historical fact and informed judgments of credibility. To ignore these findings would be tantamount to denying appellant a hearing on the motion to suppress evidence. Of course this would constitute a denial of due process. *Ex parte Geiken,* 28 S.W.3d 553, 560 (Tex.Crim.Ap͵.2000) (due process requires "notice and a meaningful opportunity to be heard"). As we held in *Ex parte Kubas,* 83 S.W.3d 366, 368 (Tex. App.-Corpus Christi 2002, no pet.), "we give the trial court almost total deference with regard to findings of historical fact supported by the record, but we review the trial court's determination of the law as well as its application of the law to the facts *de novo.*" See also, *Pena v. State,* 61 S.W.3d 745, 752–53 (Tex.App.-Corpus Christi 2001, no pet.). Therefore, we will consider the findings of fact made by the associate judge, and review *de novo* the conclusions of law.

Section 106.05 (Possession of Alcohol by a Minor) provides, in part:

(a) Except as provided in Subsection (b) of this section, a minor commits an offense if he possesses an alcoholic beverage.

(b) A minor may possess an alcoholic beverage:

(1) while in the course and scope of the minor's employment if the minor is an employee of a licensee or permittee and the employment is not prohibited by this code;

(2) if the minor is in the visible presence of his adult parent, guardian, or spouse, or other adult to whom the minor has been committed by a court; or

(3) if the minor is under the immediate supervision of a commissioned peace officer engaged in enforcing the provisions of this code.

TEX. ALCO. BEV.CODE ANN. § 106.05 (Vernon Supp.2003).

Section 106.05 defines the criminal offense of possession of alcohol by a minor and lists specific exceptions to prosecution. *Dorris v. Price*, 22 S.W.3d 42, 46 n. 2 (Tex.App.-Eastland 2000, pet. denied); *Carter v. State*, 775 S.W.2d 780, 782 (Tex. App.-Houston [1st Dist.] 1989, no pet.). While the section expressly exempts minors who participate in undercover activities, section 106.05 does not expressly authorize TABC agents to recruit minors to enter licenced premises for the purpose of purchasing alcohol. Because there is no such authority within this section or elsewhere in the code, we hold Burger was not an authorized representative of the commission and, therefore, her presence in the Mustang Lounge was not justified under sections 101.04 and 106.05.

Finally, we note that neither section 101.04 nor 106.05 exempts minors from the criminal trespass statute. Had the legislature intended to make such an exemption, "TABC undercover minors" could have easily been listed in section 30.05(c) along with fire fighters and emergency medical services personnel. Our law is clear that the express mention or enumeration of one person, thing, consequence, or class is tantamount to an express exclusion of all others. *Ex parte McIver*, 586 S.W.2d 851, 856 (Tex.Crim.App.1979). The State argues that not all exceptions to section 30.05 are enumerated within the statute. In support of this argument, the State relies upon *Rosalez v. State*, 875 S.W.2d 705 (Tex.App.-Dallas 1993, pet. ref'd). However, that reliance is misplaced. The *Rosalez* Court conducted exhaustive research on why peace officers were not specifically enumerated in section 30.05 and came to the following conclusion:

It is clear from the above committee meeting discussions and floor debates why the legislature did not provide a defense to prosecution for peace officers under section 30.05(c). The legislature obviously was concerned that peace officers might enter a person's property and conduct an illegal search under the pretext they were there because of exigent circumstances. But the legislature was aware too that peace officers could avail themselves of at least two separate defenses under the penal code to avoid prosecution for any criminal trespass they might commit in the course of performing their official duties under exigent circumstances. We conclude based on the statute's legislative history that one of the reasons the legislature did not provide a specific defense to prosecution for peace officers under section 30.05(c) is because an adequate defense to prosecution for this offense is available under section 9.21 of the Texas Penal Code.

*Id.* at 716–717. As discussed above, Burger was not a peace officer under either

article 2.12 or 2.14. TEX.CODE CRIM. PROC. ANN. art. 2.12 (Vernon Supp.2003), art. 2.14 (Vernon 1977). Therefore, *Rosalez* is not persuasive authority in the instant case.

Having held that neither section 101.04 nor 106.05 of the Texas Alcoholic Beverage Code authorized Burger's presence in the Mustang Lounge, we hold Burger was a trespasser.

## B. Article 38.23, The Texas Exclusionary Rule.

Appellant argues that since Burger was a trespasser, article 38.23 requires that the evidence obtained as a result of the trespass must be suppressed. The State argues that even if Burger was a trespasser, appellant lacks standing under article 38.23.

Article 38.23(a) provides:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

TEX.CODE CRIM. PROC. ANN. art. 38.23 (Vernon Supp.2003). This article, also known as the Texas exclusionary rule, affords greater protection than the Fourth Amendment to the United States Constitution and article I, section 9 of the Texas Constitution. *Carroll v. State,* 911 S.W.2d 210, 219 (Tex.App.-Austin 1995, no pet.). Greater protection is afforded because the statute is very broad in nature. *Vega v. State,* 32 S.W.3d 897, 900 (Tex.App.-Corpus Christi 2000, no pet.). Article 38.23 expressly includes within its sweep both law enforcement officers and private citizens who violate the "law" to obtain evidence. *State v. Johnson,* 939 S.W.2d 586, 587–88 (Tex.Crim.App.1996); *Samuel v. State,* 688 S.W.2d 492, 493–94, 496 (Tex.Crim.App.1985) (upholding exclusion under

article 38.23 of defendant's post-arrest failure to proclaim innocence after vigilante arrest); *Hill v. State,* 641 S.W.2d 543, 544 (Tex.Crim.App.1982) (evidence obtained as result of warrantless citizen's arrest should have been excluded under article 38.23).

Despite the statute's clear and unambiguous language, the literal text of the statute has not always been followed. *Johnson,* 939 S.W.2d at 588 (McCormick, P.J., dissenting) (citing *Fuller v. State,* 829 S.W.2d 191, 201–02 (Tex.Crim.App.1992), at 211 (Miller, J., concurring), and at 210–11 (Clinton, J., dissenting)); *State v. Daugherty,* 931 S.W.2d 268 (Tex.Crim.App.1996). This is so because when construing a statute, even one that is plain on its face, appellate courts may consider other factors such as the object sought to be attained by the statute. TEX. GOV'T CODE ANN. § 311.023 (Vernon 1998); *see also* TEX.CODE CRIM. PROC. ANN. art. 1.26 (Vernon 1977) (the provisions of the code shall be liberally construed so as to attain the objects intended by the legislature). As stated by Professors George E. Dix and Robert O. Dawson:

> Given the number and nature of statutory requirements that might be violated in the acquisition of evidence, reading [Article 38.23] as applicable without qualification to all "laws" is arguably so absurd that it cannot reflect legislative intention .... the fairest reading of the statute is that it must have been intended to permit challenges to evidence on the basis that the evidence was obtained *in violation of a "law" that serves to protect individual's personal and property rights from infringement by others, whether those others are acting in official capacities or not.* "Laws" serving other functions, then, would not be a sufficient predicate on which to base an article 38.23 objection to prosecution evidence.

40 GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 4.46 (1995) (emphasis added).

The Court of Criminal Appeals has stated the primary purpose of the exclusionary rule is to deter police activity that could not have been reasonably believed to be lawful by the officers committing the conduct. *Drago v. State,* 553 S.W.2d 375, 378 (Tex.Crim.App.1977). More recently, the Austin Court of Appeals stated the more accurate expression that the article's primary purpose is to deter unlawful actions which violate the rights of the criminal suspects. *Watson v. State,* 10 S.W.3d 782, 784 (Tex.App.-Austin 2000, no pet.) (quoting *Carroll,* 911 S.W.2d at 221). Simply stated, article 38.23 may not be invoked for statutory violations unrelated to the purpose of the exclusionary rule.[4] *Lane v. State,* 951 S.W.2d 242, 243 (Tex.App.-Austin 1997, no pet.); *Carroll,* 911 S.W.2d at 221. Therefore, when examining an article 38.23 claim the issue is whether the "law" violated to obtain the evidence was a law that served to protect the defendant's personal or property rights from infringement by others. 40 GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCE-

DURE § 4.46 (1995). If so, the defendant has standing to pursue an article 38.23 claim; if not, the defendant has no standing and will not be heard to complain on appeal.

### i. Does Burger's Trespass Implicate the Protections of Article 38.23?

The question presented in the instant case is whether Burger's unlawful conduct violated appellant's constitutional or statutory rights.[5] Despite the limitations upon article 38.23 discussed above, it is indisputable that private citizen's violations of the penal code may fall within the purview of article 38.23. *Flanary v. State,* 134 Tex.Crim. 606, 117 S.W.2d 71, 71–72 (1938); *Dunn v. State,* 979 S.W.2d 403, 407 (Tex.App.-Amarillo 1998, pet. ref'd); *State v. Johnson,* 896 S.W.2d 277, 291 (Tex.App.-Houston [1st] 1995), *aff'd,* 939 S.W.2d 586 (Tex.Crim.App.1996).

In *Johnson,* a capital murder prosecution, the decedent's sons entered the residence where the defendant had lived with the decedent. *Johnson,* 896 S.W.2d at 289. When removing the decedent's property, the sons also took private papers belonging to the defendant, and delivered those

---

4. We have found many examples of violations of the law did not invoke the provisions of article 38.23(a). *Roy v. State,* 608 S.W.2d 645, 651 (Tex.Crim.App.1980) (violation of the Assumed Name Statute did not require suppression under article 38.23); *Pannell v. State,* 666 S.W.2d 96, 97–98 (Tex.Crim.App. 1984) (violation of a disciplinary rule of the Code of Professional Responsibility of the State Bar of Texas does not constitute a violation of a state law within the meaning of article 38.23); *Andrews v. State,* 164 Tex. Crim. 1, 296 S.W.2d 275, 276 (1956) (testimony of physician not licensed to practice in Texas who conducted examination of a rape complainant was did not invoke article 38.23); *Fisher v. State,* 839 S.W.2d 463, 469 (Tex.App.-Dallas 1992, no pet.) (Health and Safety Code section 481.159 "has nothing to do with the exclusionary rule"); *Ramirez v.*

*State,* 822 S.W.2d 240, 246 (Tex.App.-Houston [1st Dist.] 1991, pet. ref'd) (arrest not invalidated by the fact that a citizen-informer who assisted officer in arrest illegally possessed a firearm); *Stockton v. State,* 756 S.W.2d 873 (Tex.App.-Austin 1988, no pet.) (evidence obtained by undercover narcotics officer enrolled in high school in violation of Texas Education Code not excluded under article 38.23).

5. We first note that this case involves the violation of two separate statutes: trespassing and the sale of an alcoholic beverage to a minor. The latter violation of the Alcoholic Beverage Code is discussed below in section ii, *infra,* where we discuss the issue of standing. We address the violation of the criminal trespass statute in this section.

papers to the police. *Id.* The State sought to use these papers as evidence against the defendant, but the trial court excluded the papers under article 38.23 because they had been unlawfully removed from the defendant's residence. *Id.* at 290.

The First Court of Appeals upheld the trial court's ruling based upon the plain language of article 38.23: "the trial court found that the [decedent's sons] violated the law in taking [defendant's] property.... The statute prevents this property, even though taken by private persons, from being used in evidence against [the defendant]." *Id.* at 291.[6]

In *Dunn*, an aggravated robbery case, the defendant contended the evidence of the robbery should have been suppressed because it was recovered as a result of a citizen's arrest. *Dunn*, 979 S.W.2d at 406. The Amarillo Court of Appeals recognized that article 38.23 applied to the activities of private citizens and peace officers alike, and accepted without question the presumption that article 38.23 would apply to exclude the evidence if the appellant's arrest by a citizen had violated the law. *Id.* at 407. The court ultimately held that article 38.23 did not require the exclusion of evidence of the robbery because the arrest was legal. *Id.* at 407–09.

The case of *Flanary, supra*, was decided under the predecessor to article 38.23, Texas Code of Criminal Procedure article 727a. In *Flanary*, two agents of the Texas Liquor Control Board, armed with a search warrant, entered the defendant's place of business and conducted a search which uncovered illegal whiskey. *Flanary*, 134 Tex.Crim. at 606, 117 S.W.2d 71. The defendant argued the evidence should

have been suppressed because the law did not include Liquor Control Board agents as "peace officers" and therefore, the agents were not entitled to conduct searches pursuant to a warrant. *Id.* The court of criminal appeals agreed, holding the search was *not* conducted by peace officers, and therefore, the search of the defendant's residence was illegal. *Id.* at 607, 117 S.W.2d 71. While *Flanary* does not expressly state that the evidence was suppressed because the search was conducted by private citizens, that is the necessary implication.

At least two courts of appeals have addressed whether article 38.23 requires the suppression of evidence obtained as a result of criminal trespass. In *Martin v. State*, 67 S.W.3d 340 (Tex.App.-Texarkana 2001, pet. ref'd), a methamphetamine possession case, the State executed a search warrant of the defendant's residence based in part upon statements made by a confidential informant who had been inside, and videotaped the residence. *Id.* at 343. The defendant urged the trial court to suppress the informant's evidence because it was unlawfully obtained. *Id.* at 343–44. The Texarkana Court of Appeals accepted the premise that article 38.23 would require that the informant's statements be excluded from the search warrant affidavit if the informant had trespassed into the defendant's residence. *Id.* The *Martin* court ultimately upheld the search based upon the trial court's findings that the informant was not a trespasser. *Id.* at 344.

In *McCuller v. State*, 999 S.W.2d 801 (Tex.App.-Tyler 1999, pet. ref'd), a prosecution for injury to the disabled, the defendant was charged with failing to provide

---

**6.** *The court of appeals held the evidence was properly suppressed even though the decedent's sons were not prosecuted for burglary or theft. In fact, the grand jury no-billed the sons for their actions in obtaining the defen-*

*dant's papers. Johnson, 896 S.W.2d at 289. It is, therefore, clear that the unlawful conduct by private persons does not depend upon a formal prosecution before the protections of article 38.23 may be invoked.*

adequate care for his diabetic wife. *Id.* at 802. The defendant and his wife lived in a house willed to the defendant's wife by her grandmother and subject to certain conditions. *Id.* at 802–03. After the defendant's wife was hospitalized for her diabetes, the executor of the estate brought eviction proceedings, contending the defendant and his wife were not in compliance with the provisions of the will. *Id.* at 803. After the initiation of the proceedings, and during a time when the defendant's wife was not home, the executor and his attorney entered the house with the assistance of a locksmith, despite posted no-trespassing notices on the entrance. *Id.* While inside, the executor took photographs of the dilapidated condition of the interior of the house, which were later used by the State to demonstrate the defendant's lack of adequate home care of his wife. *Id.* The defendant objected to the photographs on the basis that they were obtained as a result of criminal trespass, and should have been excluded under article 38.23. *Id.*

The Tyler Court of Appeals acknowledged that "the plain language of article 38.23 was construed to preclude the unlawful or unconstitutional actions of all persons, both governmental and private." *McCuller,* 999 S.W.2d at 804 (citing *State v. Johnson,* 939 S.W.2d 586, 587 (Tex. Crim.App.1996)). Therefore, the prohibitions of article 38.23 applied to exclude the photographing of the interior of the house by the executor if he had gained entry of the house through criminal trespass. *Id.* The court of appeals held that the defendant had "continuing legitimate expectation of privacy in the invaded space at the time of entry" and therefore, the executor's entry into the house constituted a criminal trespass. *Id.* The photographs should have been suppressed under article 38.23.

■ In the instant case, we must draw a principled distinction between a private citizen assisting law enforcement, and when a private citizen's activities conflict with the protections established by article 38.23. To make this distinction, we contrast the facts of the instant case with the hypothetical situation where a private citizen—a confidential informant—assists the police in an undercover capacity to a purchase a controlled substance. In our hypothetical; the dope dealer has posted signs on his crack house specifically notifying all law enforcement officers and confidential informants against trespassing on the premises.

A licence to sell alcohol gives to its holder the legal right to sell alcoholic beverages. Tex. Alco. Bev.Code Ann. § 28.01 (Vernon 1995). The license imposes a concomitant legal obligation upon the licence holder not to sell alcohol to minors. Tex. Alco. Bev.Code Ann. § 106.03 (Vernon Supp.2003). The sale of alcohol to a minor can, in fact, result in the loss of a licence holder's right to sell alcohol. Tex. Alco. Bev.Code Ann. § 61.71(a)(2) & (a)(5) (Vernon Supp.2003) (licence may be suspended for negligent sale of alcohol to a minor). One means of discharging this obligation is to post trespass notices, notifying minors that they are not permitted upon the premises.

■ Trespass is both a criminal violation, Tex. Penal Code Ann. § 30.05 (Vernon Supp.2003), and a civil tort. *Pentagon Enters. v. Southwestern Bell Tele.,* 540 S.W.2d 477, 478 (Tex.App.-Houston [14th Dist.] 1976 writ ref'd n.r.e.). The rationale behind these legal remedies is the individual's right to control his own property from the incursions of others. *Chunn v. State,* 821 S.W.2d 718, 721 (Tex.App.-Houston (1st Dist.) 1991, pet. ref'd); *Reed v. State,* 762 S.W.2d 640, 645 (Tex.App.-Texarkana 1988, pet. ref'd); *Pentagon En-*

*ters.,* 540 S.W.2d at 478. This right coincides with the right of a licence holder to conduct his business, while attempting to lawfully exclude from his premises those not legally permitted to purchase alcohol, but who might attempt to do so. Thus, in the case at bar, the owner of the Mustang Lounge had both a legal right to sell alcoholic beverages, and the legal obligation to exclude minors from the premises. The rights conferred by the trespass statute were utilized to support the right to sell alcohol to the general public, and the concomitant obligation not to sell alcohol to minors.

The situation presented by the case at bar is easily contrasted to our hypothetical situation where a drug dealer attempts to exploit the trespass statute to exclude law enforcement personnel and civilian informants from his crack house. The drug dealer has no "right" to sell the controlled substances to any person. While maintaining a right to exclude others from his property, the drug dealer has no legitimate right in utilizing the criminal trespass statute to further support his illegal sale of contraband because there is no "right" to sell the controlled substances in the first place. To the extent that article 38.23 has been limited to exclude violations of the law which are unrelated to its purpose of preventing police and private individuals engaging in illegal conduct for the purpose of investigating crime, *Watson,* 10 S.W.3d at 784, we believe there is a critical distinction between a civilian acting in an undercover capacity who violates the criminal trespass statute in order to purchase drugs, and a civilian attempting to bypass a licence holder's legitimate attempts to exclude minors from the licenced premises through the posting of no-trespass notices. 40 GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 4.46 (1995). Consequently, we hold Burger's trespass implicates the protections of article 38.23.

### ii. Does Appellant Have Standing to Invoke the Protections of Article 38.23?

▆▆▆▆▆ Having held the that instant violation of the criminal trespass statute falls under the protection of article 38.23, we must now determine whether appellant has standing to invoke the protections of article 38.23. *Chavez v. State,* 9 S.W.3d 817, 819 (Tex.Crim.App.2000); *Fuller v. State,* 829 S.W.2d 191, 201–02 (Tex.Crim. App.1992). "The right to complain because of an illegal search and seizure is a privilege personal to the wronged or injured party, and is not available to anyone else." *Fuller,* 829 S.W.2d at 201. Nevertheless, standing may extend to a person acting in a representative capacity. As noted in *Fuller:*

> 'Standing consists of some interest peculiar to the person individually and not as a member of the general public.' *Hunt v. Bass,* 664 S.W.2d 323, 324 (Tex.1984). 'For a person to maintain a court action, [therefore,] he must show that he has a justiciable interest in the subject matter in litigation, either in his own right or in a representative capacity.' *Housing Authority v. State ex rel. Velasquez,* 539 S.W.2d 911, 913 (Tex.Civ.App.-Corpus Christi 1976, writ ref'd n.r.e.). *See also Develo-cepts, Inc. v. City of Galveston,* 668 S.W.2d 790 (Tex.App.-Houston [14th Dist.] 1984, no pet.).

*Fuller,* 829 S.W.2d at 201–02.

As the *Fuller* court observed, third parties may possess standing when they have a "justiciable interest in the subject matter in litigation, either in his own right or in a representative capacity." *Id.* at 201.[7] Appellant challenges Burger's criminal trespass onto the premises where appellant

---

**7.** In discussing third party standing, *Fuller* cited this Court's opinion in *Housing Authori-*

was an employee. At the hearing, appellant testified that she possessed the authority by virtue of her employment to instruct minors to leave the premises and that she could/would use another employee to forcibly exclude a minor from the premises if necessary. The associate judge specifically found appellant had a greater right of possession to the establishment than did Burger; and appellant had the apparent authority to act on behalf of the owner. Appellant clearly possessed the authority to enforce the licence holder's right to exclude minors from the premises. Consequently, we hold appellant has standing to invoke the protections of article 38.23.

The State argues that appellant has no standing because Burger's trespass did not infringe upon any right held by Burger. In support of this argument the State relies upon *State v. Tyson*, where a store clerk sold an alcoholic beverage to a minor.[8] *State v. Tyson*, 919 S.W.2d 900, 902 (Tex.App.-Eastland 1996, no pet.). The defendant argued the evidence was unlawfully obtained because the TABC agent violated the Texas Alcoholic Beverage Code in permitting a minor to purchase an alcoholic beverage. The *Tyson* court found a lack of standing because none of the defendant's rights were violated in the transaction. *Id.* at 903. In other words, even though a law was violated and that

law violation led to evidence against the defendant, the violation of that law did not violate any personal right of the defendant.

Another case on the same theme is *Watson v. State*, where the defendant agreed to engage in a sex act solicited by an undercover police officer. *Watson*, 10 S.W.3d at 783. The defendant argued the evidence was unlawfully obtained because the officer violated the law by agreeing to engage in sexual conduct for a fee. *Watson*, 10 S.W.3d at 783–84; *see also* TEX. PEN.CODE ANN. § 43.02 (Vernon Supp. 2003). The *Watson* court rejected the argument because the violation of the law by the officer did not violate any constitutional or statutory right possessed by the defendant. *Id.* at 784. In other words, because the defendant had no right to solicit sexual conduct, he had no standing to complain about the violation of the law by the undercover peace officer who made the sexual offer. *Id.*

We find both cases distinguishable. *Tyson, supra*, is distinguishable because the only issue regarding standing was the direct violation of Texas Alcoholic Beverage Code, section 106.03(a). *Watson* is similarly distinguishable because the sole issue was whether the defendant had standing to challenge the police officer's violation of section 43.02 of the Texas Penal Code. The present situation is demonstrably different because appellant has standing by virtue of

---

ty v. State ex rel. Velasquez, 539 S.W.2d 911, 913 (Tex.Civ.App.-Corpus Christi 1976, writ ref'd n.r.e.). In that case, we cited several grounds in which a litigant might satisfactorily demonstrate third party standing: 1) she has sustained, or is immediately in danger of sustaining, some direct injury as a result of the wrongful act of which she complains; 2) she has a direct relationship between the alleged injury and claim sought to be adjudicated; 3) she has a personal stake in the controversy; 4) the challenged action has caused the plaintiff some injury in fact, either economic, ethic, recreational, environmental, or otherwise; or 5) she is an appropriate party to

assert the public's interest in the matter, as well as her own interest. *Velasquez*, 539 S.W.2d at 913–14. We find that appellant meets several of these criteria to assert third party standing in the instant case.

**8.** The State also relied upon *Tyson* in the hearing before the associate judge. However, the associate judge did not address this argument in his findings and conclusions which caused the State to object to the failure to include "any of the State's arguments and law which were presented to the Associate Judge."

her representative capacity as an employee authorized to enforce the criminal trespass notice. Additionally, appellant has standing to the extent the criminal trespass notice was posted for her protection from minors attempting to illegally purchase alcohol. Consequently, we hold appellant has standing to invoke the protections of article 38.23.

### III Conclusion.

For the reasons stated above, we hold Burger was a trespasser. We further hold that a violation of the criminal trespass statute, section 30.05, implicates the protections of article 38.23. Finally, we hold appellant by virtue of her status as an employee at the Mustang Lounge had standing to invoke the protections of article 38.23. Consequently, we hold the trial court erred by denying appellant's motion to suppress evidence.

The judgment of the trial court is reversed and this cause is remanded for further proceedings consistent with this opinion.