

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-10-00362-CR

GARRETT GOWER                                                    APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

----------

### FROM THE 362ND DISTRICT COURT OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant Garrett Gower appeals his capital murder conviction, contending in two issues that he was denied effective assistance of counsel and that the trial court erred by admitting the testimony and reports of a doctor who was employed by a private association that was acting as a medical examiner, allegedly in

---

[1]*See* Tex. R. App. P. 47.4.

violation of article 49.25 of the code of criminal procedure. *See* Tex. Code Crim. Proc. Ann. art. 49.25, § 2 (West 2006). We affirm.

## Background Facts[2]

In 2009, appellant dated a sixteen-year-old girl named Brittany, and he was often around her family, including her mother, Judith, and her sister, Crystal. Toward the end of October 2009, Brittany learned that she was pregnant, and appellant conceded to Judith that he was the father. Brittany and appellant quarrelled on multiple occasions. Judith talked to appellant about telling his parents about Brittany's pregnancy, but he did not want to do so.

On November 9, 2009, appellant had a "kind of heated" conversation with Brittany and Crystal in which Crystal encouraged appellant to tell his parents about the pregnancy. Later that night, Brittany told appellant in a text message that she was going to tell his mother about the pregnancy. Appellant responded by calling Brittany's cell phone several times in the subsequent early morning hours.

Appellant eventually went to Judith's apartment and stayed with Brittany on the early morning of November 10, 2009. When Judith awoke to go to work, she reminded Brittany that Brittany's doctor's appointment was scheduled for that

---

[2]Because appellant does not challenge the sufficiency of the evidence to support his conviction, we will only briefly summarize the facts of his offense.

afternoon. Appellant had volunteered to take Brittany to the appointment. But neither he nor Brittany ever made it there. From the doctor's office, Judith called appellant's and Brittany's phones with no response, and then Judith called Crystal to ask if she had seen Brittany or appellant.

Crystal left work and went home, where she found Brittany lying in their mother's bed. Crystal tried to wake Brittany but could not. Brittany was dead. Crystal called 911. To a responding paramedic, Brittany's body appeared to be staged; she was lying flat on her back with her arms at her side, and she had been covered by a blanket. Based on the condition of Brittany's body, the paramedic believed that Brittany had been dead for a long time.

Police officers who came to the apartment did not notice any signs of forced entry, nor did they believe, from looking at the condition of the apartment, that a burglary had occurred. But officers noticed blood matted into Brittany's hair mixed with glass on the left side of her head; glass shards from a broken vase scattered about the room; pieces of glass in the bed; blood on a pillow and the bed sheets; and cuts on Brittany's lips, hands, and elbow. Based on the broken glass found at the scene, officers believed that whoever had been with Brittany could have received cuts. Judith came to the scene, and based on her conversation with some of the officers and the fact that appellant was the last person known to have been in contact with Brittany, the officers began to look for

3

appellant. A detective eventually found him at a Bedford mental health facility, and the detective noticed cuts on appellant's forearm, one of his hands, and his knee.[3] Appellant could not be excluded as a contributor to mixed DNA samples found on and near Brittany's body. Also, a Denton County Sheriff's Office investigator discovered appellant's fingerprints on a broken vase that was close to Brittany's body.

Dr. Marc Krouse, a chief deputy medical examiner, determined that Brittany had died in a homicide by suffocation. Dr. Krouse believed that Brittany had been pregnant for approximately six weeks when she died.

A grand jury indicted appellant for capital murder; the indictment alleged that appellant had killed Brittany and her unborn child in the same criminal transaction.[4] Appellant pled not guilty. The trial court appointed John Moore to represent appellant at trial. Moore secured the assistance of a second chair for voir dire. Moore also sought to quash appellant's indictment on the grounds that Brittany's unborn child was not viable and that the penal code's section related to capital murder of more than one person was void for vagueness; asked the trial court to suppress any evidence seized from appellant because the evidence was

---

[3]When appellant went to the facility, he reported that he had attempted suicide three times in the days preceding his admission.

[4]*See* Tex. Penal Code Ann. § 19.03(a)(7)(A) (West 2011).

4

obtained without probable cause and in violation of appellant's rights;[5] filed other pretrial documents, including discovery motions and a motion in limine; and discussed appellant's case with appellant, his family, an investigator, and the district attorney's office.

At trial, Moore asked numerous questions during voir dire, made many objections to the State's evidence, extensively cross-examined the State's witnesses, made an opening statement, and made a closing argument in which he contended that the State had not proved capital murder but had presented only "emotions and circumstances" to the jury. At the end of appellant's trial, the jury convicted him of capital murder. The trial court sentenced appellant to confinement for life without parole because the State did not pursue the death penalty.[6]

Represented by new counsel (the same counsel that appellant has on appeal), appellant filed a motion for new trial in which he argued, in part, that he had received ineffective assistance of counsel. The trial court denied the motion, finding that Moore had zealously advocated for appellant at trial and had "tried

---

[5]After pretrial hearings, the trial court denied appellant's motion to quash and motion to suppress.

[6]*See* Tex. Penal Code Ann. § 12.31(a)(2) (West 2011).

the case the best he could with the evidence that was available." Appellant brought this appeal.

## Appellant's Claim of Ineffective Assistance of Counsel

In his first issue, appellant contends that Moore provided ineffective assistance.[7] To establish ineffective assistance of counsel, appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065. Review of counsel's representation is highly deferential, and the reviewing court

---

[7]Although appellant purports to challenge "the effectiveness of his trial counsel during the punishment phase of his case," appellant's capital murder trial did not have a punishment phase.

6

indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Salinas*, 163 S.W.3d at 740; *Mallett*, 65 S.W.3d at 63. To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id.* (quoting *Thompson*, 9 S.W.3d at 813). It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record. *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

The second prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair and reliable trial. *Strickland,* 466 U.S. at 687, 104 S. Ct. at 2064. In other words, appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S. Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding in which the result is being challenged. *Id.* at 697, 104 S. Ct. at 2070.

**Appellant's arguments that Moore should have sought a mitigation specialist, jury consultant, and second chair**

In part of his first issue, appellant contends that Moore was ineffective because he did not obtain a mitigation specialist, jury consultant, or second chair

7

counsel to assist in appellant's defense. In the hearing on appellant's motion for new trial, Bridgett Lucchesi, a mental health therapist, testified that she was trained to be a "mitigation specialist." She defined mitigation specialist as someone who "goes and does the . . . psychosocial history . . . of someone who is charged with murder." She opined that having a mitigation specialist is important to "understand and know the person that's committed the crime" and "provide information for the court . . . that would be helpful in understanding the case." Lucchesi said that she offered Moore her services as a mitigation specialist and jury consultant but that he did not respond to her; she was concerned about whether Moore has been "death penalty certified."

While Lucchesi seemed to believe that mitigation specialists are important in death penalty cases, the State never sought the death penalty in this case. Moreover, as Moore stated in the hearing on appellant's motion for new trial, a mitigation specialist would have been superfluous given that the automatic sentence upon a finding of appellant's guilt was life imprisonment. *See* Tex. Penal Code Ann. § 12.31(a)(2); Tex. Code Crim. Proc. Ann. art. 37.071, § 1 (West Supp. 2010); *Prater v. State*, 903 S.W.2d 57, 60 (Tex. App.—Fort Worth 1995, no pet.) ("There is no need to offer evidence of mitigating factors when no greater punishment than the minimum punishment permitted for the offense may be imposed."); *see also Teixeira v. State*, 89 S.W.3d 190, 194 (Tex. App.—

8

Texarkana 2002, pet. ref'd) (explaining that to show that counsel was ineffective for not retaining a mitigation expert, "there must be some showing in the record that an expert would have testified in a manner that would have benefitted" the defendant). Because mitigation was inapplicable to appellant's case, we conclude that appellant's argument that Moore was ineffective by not retaining a mitigation specialist fails to satisfy either *Strickland* prong. *See* 466 U.S. at 687, 104 S. Ct. at 2064.

Appellant also claims ineffective assistance of counsel on the ground that Moore did not employ a jury consultant for voir dire. But appellant has not argued that Moore had a faulty strategy in voir dire or that Moore performed poorly during voir dire. Nor has appellant contended that a characteristic of his case created a particularized need for a jury consultant. Thus, to characterize trial counsel as ineffective for not using a jury consultant calls for speculation, and "[i]neffective assistance of counsel claims are not built on retrospective speculation." *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002); *see Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994) (holding the defendant did not meet the first *Strickland* prong by speculating that trial counsel provided ineffective assistance for not striking a venire person). Nothing in the record suggests that counsel's voir dire, taken without the assistance of a jury consultant, led to an unreliable guilty verdict or that having a jury consultant

9

would have changed the trial's outcome.  *See Bone*, 77 S.W.3d at 834; *see also Busby v. State*, 990 S.W.2d 263, 271 (Tex. Crim. App. 1999) (holding that a "jury consultant is not a 'basic' tool of the defense.  Selecting a jury is part of an attorney's stock-in-trade.  Although a jury-selection expert's assistance would no doubt be helpful in nearly every case, such assistance is a luxury, not a necessity."), *cert. denied*, 528 U.S. 1081 (2000).  We conclude that appellant's argument about Moore's alleged ineffectiveness by failing to hire a jury consultant does not satisfy either *Strickland* prong.  *See* 466 U.S. at 687, 104 S. Ct. at 2064.

Next, although appellant complains that Moore should have requested a "second chair" to assist at trial, the record indicates that appellant did have a second attorney, Chris Jones, during part of the trial, and that Moore paid Jones for the assistance.  And even if Jones did not assist in other parts of the trial, appellant cannot establish that the second *Strickland* prong has been met because he has not directed us to deficient and potentially outcome determinative trial tactics by Moore that might have been prevented with assistance of more attorneys.

**Moore's investigation of the case**

In another part of his first issue, appellant argues that Moore was ineffective because he did not adequately investigate the facts of the offense.

10

First, appellant contends that Moore was ineffective because he did not interview Rafe Foreman, who was present at appellant's arrest and initially represented appellant but later withdrew as his counsel. During the hearing on his motion for new trial, appellant testified that he told Moore to contact Foreman because Foreman had "certain information that was relevant and important to the case." Moore called Foreman's office several times because Foreman may have had knowledge of the procedure used by officers to collect appellant's DNA, but Moore never spoke to Foreman. Specifically, Moore testified that appellant's mother had told him that Foreman had witnessed a police officer clean out a DNA sample jar with his finger before he took DNA from appellant. Moore asked appellant whether he had seen this happen, and appellant said no. Moore also instructed his investigator to talk to the police officers that collected the DNA. And Moore testified that he felt "satisfied after . . . talking to [the investigator] and talking to [appellant] and looking at the DNA results" that the officer had not cleaned out the jar with his finger. Nonetheless, during the trial, Moore asked the detective who collected appellant's DNA whether he had worn gloves while doing so, and the detective affirmed that he did wear gloves and did not clean out any vessel with his finger. Appellant did not call Foreman at the hearing on the motion for new trial to testify that the detective had indeed cleaned the jar with his finger, nor did appellant produce evidence indicating that the jury's finding of

11

guilt might have changed had the officer done so. Because Moore investigated the issue that appellant wanted him to speak with Foreman about and because the record does not show prejudice from Moore's lack of a conversation with Foreman, we cannot conclude that appellant has satisfied either *Strickland* prong on the basis that Moore did not talk to Foreman. *See* 466 U.S. at 687, 104 S. Ct. at 2064.

Appellant also contends that Moore was ineffective because he did not adequately investigate whether the apartment complex where Brittany was murdered had surveillance cameras,[8] did not research people whom appellant identified as potential suspects in Brittany's murder,[9] and did not independently test DNA or hire an expert to do so. Even if we were to conclude that Moore's performance in these areas was ineffective, appellant could not satisfy the second *Strickland* prong because he provides no evidence showing a reasonable probability that the trial's outcome would have been different if his counsel had conducted further investigation: appellant did not present surveillance tapes that

---

[8]Moore asked the district attorney's office whether there were any surveillance cameras at or near the apartment complex, and someone from the office informed him that the police had not found any.

[9]Moore testified that appellant had proposed that either Brittany's father or her ex-boyfriend might have been responsible for her murder. Moore's investigator ran background checks on these men, and based on the results of those background checks, Moore was "completely uninterested in those two people being . . . the people that might have done it."

Moore had overlooked, establish that foreign DNA or contaminants in the DNA sample caused an incorrect test result, or provide evidence inculpating someone else in the crime. Therefore, because appellant's speculation does not meet the *Strickland* standard, we overrule these alleged bases of ineffectiveness. *See* 466 U.S. at 687, 104 S. Ct. at 2064; *Salinas*, 163 S.W.3d at 740; *see also Ex parte Ramirez*, 280 S.W.3d 848, 853–54 (Tex. Crim. App. 2007) (holding that the defendant failed to establish prejudice by counsel's failure to review an available surveillance tape or offer it into evidence because the defendant did not produce the video, thus failing to show that admitting it would have produced a different trial outcome); *Wilkerson v. State*, 726 S.W.2d 542, 550 (Tex. Crim. App. 1986) ("Since there is nothing in the record to show that . . . a visit to the scene would have made any difference in the defense's case, the failure of the attorneys to visit the scene does not militate against a finding of reasonable representation."), *cert. denied*, 480 U.S. 940 (1987).

**The investigation of appellant's brain injuries**

Finally, appellant contends that Moore was ineffective for failing to investigate appellant's brain injuries that, according to appellant, could have affected his ability to appreciate or control his actions. The record indicates that in the spring of 2009, appellant had a car crash in which he suffered a concussion and injured his head; a week later, he had a second accident in

13

which he again hit his head. During the hearing on his motion for new trial, appellant testified that he had asked Moore to investigate those brain injuries and to arrange for appellant to be psychologically evaluated. Appellant testified that he was "not sure" whether he had ever been diagnosed with automatism, but he stated that he had been diagnosed as having a condition that affects his ability to control his actions. He said that he had asked Moore to contact Dr. James Barry with regard to the diagnosis.

Moore did not speak with Dr. Barry, was not aware of what automatism is,[10] and did not review medical records that might have related to appellant's mental state at the time of the offense. Moore testified, "Somebody told me [appellant had] been in some kind of accident or something like that. And just talking to him, I didn't seem to see there was any evidence that he was not understanding what I was talking to him about. So I did not pursue that." Upon receiving appellant's case, Moore decided that the best trial strategy was to contest the sufficiency of the State's evidence against appellant. In pursuing that strategy, Moore disregarded alternative defenses that presumed that appellant had killed Brittany.

---

[10]Automatism is the defense of unconsciousness and is "related to but different from the defense of insanity." *Mendenhall v. State*, 77 S.W.3d 815, 818 n.4 (Tex. Crim. App. 2002).

Appellant has not contended that contesting the sufficiency of the State's evidence to convict him was an unreasonable trial strategy. It would be difficult for him to do so because he filed his motion for new trial on the basis, among others, that his conviction was not supported by sufficient evidence. Appellant contends on appeal that Moore ignored a viable automatism-related defense. But the pursuit of that defense, in which appellant apparently would have admitted that he killed Brittany but did not realize he was doing so, would have been inconsistent with appellant's defense that he did not kill her. Nonetheless, we need not decide whether Moore's representation fell below prevailing professional norms by Moore not investigating appellant's brain injuries or automatism because we conclude that appellant cannot meet the burden imposed by the second *Strickland* prong. At the hearing on his motion for new trial, appellant offered no psychiatric diagnosis, expert opinion, or any other evidence indicating that even if he suffered from automatism generally, that condition caused or contributed to Brittany's death. *See Conrad v. State*, 77 S.W.3d 424, 426–27 (Tex. App.—Fort Worth 2002, pet. ref'd) ("[T]here was no evidence offered at the hearing on the motion for new trial that any physician or social worker would have testified that Appellant was legally insane at the time of the offense. . . . [W]e cannot say that Appellant showed the outcome would have been different had trial counsel performed as the law requires."). Appellant did

not testify at the hearing on his motion for new trial that he could not remember what happened on the day Brittany died or that he remembered killing her but could not control his actions when he did so; rather, he recalled that Brittany let him out of Judith's apartment on the morning of the murder, that he never returned to the apartment, and that his mother told him about Brittany's death. Because appellant has not shown by a preponderance of the evidence that there is a reasonable likelihood that the result of his trial would have been different if Moore had investigated his alleged automatism, we conclude that he cannot sustain his ineffective assistance claim under *Strickland*. *See* 466 U.S. at 687, 104 S. Ct. at 2064.

For all of these reasons, we find no basis to agree with any of the alleged specific grounds for appellant's ineffective assistance claim. Furthermore, considering the totality of Moore's representation before and during trial, we hold that appellant has failed to satisfy the requirements of *Strickland*. *See id.*; *Thompson*, 9 S.W.3d at 813. We overrule appellant's first issue.

### The Admission of Dr. Krouse's Testimony and Reports

In his second issue, appellant argues that the trial court erred by admitting the testimony and reports of Dr. Krouse, the chief deputy medical examiner who performed Brittany's autopsy. We review a trial court's decision to admit or to

16

exclude evidence under an abuse of discretion standard. *Orona v. State*, 341 S.W.3d 452, 464 (Tex. App.—Fort Worth 2011, pet. ref'd).

Appellant argues that Dr. Krouse is impermissibly "employed by a business entity acting as a medical examiner in violation of [article 49.25] of the Texas Code of Criminal Procedure[,] which requires a medical examiner . . . to be a natural person." Dr. Krouse is not a county employee. At trial, appellant objected to Dr. Krouse's testimony about Brittany's autopsy on the basis that he is not a county official and cannot qualify as a deputy medical examiner. At the hearing on his motion for new trial, appellant presented evidence that Dr. Nizam Peerwani's professional association, rather than Dr. Peerwani himself, contracts with counties to provide medical examiner services.

Appellant argues that article 49.25 of the code of criminal procedure precludes a business entity from holding the medical examiner's office. He contends that the Tarrant County Commissioners Court exceeded its authority by contracting with the professional association.[11] Thus, appellant contends that because Dr. Peerwani's professional association did not qualify as a medical examiner, the evidence gathered by Dr. Krouse, an employee of the professional association, should not have been admitted. Section two of article 49.25 recites,

---

[11]The record indicates that the professional association performs medical examiner services for Tarrant, Johnson, Parker, and Denton counties.

17

"The commissioners court shall appoint the medical examiner, who shall serve at the pleasure of the commissioners court. No person shall be appointed medical examiner unless he is a physician licensed by the State Board of Medical Examiners." Tex. Code Crim. Proc. Ann. art. 49.25, § 2. Section fourteen of article 49.25 states that a person commits a Class B misdemeanor by violating the article. *Id.* art. 49.25, § 14. Article 49.25, however, does not contain any provision that excludes evidence that was produced through an autopsy that was performed in violation of the article. Appellant does not provide authority interpreting the article in that manner, and we have found none.

Article 38.23(a) states, "No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." *Id.* art. 38.23(a) (West 2005). Despite article 38.23(a)'s broad language, it does not "confer automatic third party standing upon all persons accused of crimes, such that they may complain about the receipt of evidence which was obtained by violation of the rights of others, no matter how remote in interest from themselves." *Fuller v. State*, 829 S.W.2d 191, 202 (Tex. Crim. App. 1992), *cert. denied*, 508 U.S. 941 (1993), *overruled on other grounds by Riley v. State*, 889 S.W.2d 290 (Tex. Crim. App. 1994)). "The underlying purpose of both the federal exclusionary rule and

article 38.23 is the same: *to protect a suspect's privacy, property, and liberty rights* against overzealous law enforcement.[12] As such, both exclusionary rules are substantive in nature, as they *provide a remedy for the violation of those rights*." *Wilson v. State*, 311 S.W.3d 452, 458–59 (Tex. Crim. App. 2010) (emphasis added) (footnotes and citations omitted). Thus, article 38.23(a) "may not be invoked for statutory violations unrelated to the purpose of the exclusionary rule or to the prevention of the illegal procurement of evidence of crime." *Id.* at 459; *see Watson v. State*, 10 S.W.3d 782, 784 (Tex. App.—Austin 2000, no pet.) (expressing that article 38.23(a)'s primary purpose is to deter unlawful actions that violate the rights of criminal suspects); *State v. Tyson*, 919 S.W.2d 900, 903 (Tex. App.—Eastland 1996, pet. ref'd) ("Tyson does not have 'standing' to suppress the evidence under Article 38.23 because none of his rights were violated in the transaction."). In various contexts, courts have held that alleged statutory violations do not require the exclusion of evidence when the statute is unrelated to protecting the defendant's rights. *See Watson*, 10 S.W.3d at 784 (collecting cases that declined to apply article 38.23's exclusionary rule to alleged statutory violations); *Stockton v. State*, 756 S.W.2d 873, 874 (Tex. App.—Austin 1988, no pet.) (determining that evidence obtained

---

[12]The court of criminal appeals has implied that medical examiners do not qualify as law enforcement officials. *See Garcia v. State*, 868 S.W.2d 337, 342 (Tex. Crim. App. 1993).

by a undercover narcotics officer who was enrolled in high school, allegedly in violation of the education code, was not required to be excluded under article 38.23); *see also Andrews v. State*, 164 Tex. Crim. 1, 3, 296 S.W.2d 275, 276 (1956) (overruling a defendant's contention that testimony from a physician was inadmissible because the physician conducted a vaginal examination of a rape victim while not licensed to practice).

Appellant does not explain how the arrangement between the counties and Dr. Peerwani's professional association, even if possibly violating article 49.25, invades his rights with respect to his charge for killing Brittany. Appellant's argument in this case is similar to a defendant's argument in another case decided by this court, *Orr v. State*, 306 S.W.3d 380, 400 (Tex. App.—Fort Worth 2010, no pet.). Orr argued that the trial court erred by admitting the testimony of the State's fire investigation expert because the expert was not licensed to conduct fire investigations. *Id.* We noted that although article 38.23 "seems to require exclusion of evidence tainted by every violation of Texas law, not every violation of law triggers article 38.23's exclusionary effect" because "article 38.23's primary purpose is to deter unlawful actions that violate the rights of criminal suspects." *Id.* We then decided that because Orr did not allege a violation of *her* rights related to the fire investigator's alleged violation of the law,

she lacked standing to challenge the investigator's testimony under article 38.23. *Id.* at 400–01.

Similar to Orr, appellant challenges the admissibility of evidence based on a perceived violation of statutory qualifications by the person who collected the evidence. However, like Orr, appellant has failed to identify a violation of his own rights as a result of the alleged violation.[13] Thus, we conclude that appellant lacks the proper standing to assert a violation of article 49.25.[14] We hold that the trial court did not abuse its discretion by admitting Dr. Krouse's testimony and reports, and we overrule appellant's second issue.

---

[13]We note that although appellant contests the legality of Dr. Krouse's status as a deputy medical examiner under article 49.25, appellant has not contested Dr. Krouse's general medical qualifications to render an expert opinion on issues related to Brittany's death, nor has appellant argued that the validity of Dr. Krouse's findings from Brittany's autopsy were somehow affected by the fact that he is employed by the professional association and not directly by the counties that he serves.

[14]Therefore, we express no opinion on the legality of the arrangement between Dr. Peerwani's professional association and the counties that the association serves.

**Conclusion**

Having overruled appellant's issues, we affirm the trial court's judgment.


TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON C.J.; GARDNER and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  October 13, 2011