**Affirmed and Opinion Filed July 30, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00921-CR

**JOSHUA PAUL WASHBURN, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

### On Appeal from the Criminal District Court No. 7
### Dallas County, Texas
### Trial Court Cause No. F-1161795-Y

## OPINION

Before Justices Moseley, O'Neill, and FitzGerald
Opinion by Justice FitzGerald

A jury convicted appellant of aggravated sexual assault of a child under fourteen years of age and sentenced him to twenty-five years' imprisonment. In four issues on appeal, appellant challenges the admission of testimony concerning other crimes, wrongs, and bad acts committed against the victim. Concluding appellant's arguments are without merit, we affirm the trial court's judgment.

## BACKGROUND

At trial, M.W. testified that she was born on October 12, 1992, in Tanzania, Africa, and was adopted along with her brother, F.W., by appellant's parents, Phil and Phyllis Washburn, when she was four years old. The Washburns have another adopted child, C.A., and two

biological sons, appellant and his brother Jacob. The family moved to Ferris, Texas when M.W. was five.

In November of 2001, when M.W. was nine, the family moved to Dallas. M.W., F.W., and C.A. each had a separate bedroom in Dallas. Appellant and Jacob shared a guest bedroom until Jacob moved out in 2002. Appellant lived in the house full-time for six months until he started school in Arlington in May of 2002; after that, he came home every weekend.

M.W. testified that she first remembers inappropriate contact by appellant when she was five years old. M.W. said that she and appellant would "snuggle on the couch" and appellant would touch her, or get very close to her and "rub" her as he touched her breasts and vagina. The two would also snuggle in appellant's bed, where appellant would touch M.W. and unbutton his jeans. The activity M.W. described as "touching and kissing and dry humping . . . just rubbing up against each other" happened many times in Ferris and continued until the family moved to Dallas.

During the first six months in Dallas, appellant and M.W. developed a routine in which they frequently got in bed together, and appellant kissed and touched M.W. and made her climb on top of him. After appellant moved to Arlington, this activity continued whenever he came home. Eventually, Appellant began removing M.W.'s clothing before she climbed on top of him, and she could feel his penis through the hole in his underwear. While he was touching her, appellant told M.W. that her kissing was getting better, and he complimented her breasts and asked if she ever shaved around her vagina. While M.W. was on top of him, appellant would tell her to "move around a lot," and that she "needed to go slower."

When M.W. was ten years old, she began questioning appellant about his behavior. Appellant told her, "You know not to tell Mama and Papa." On one occasion appellant

masturbated in front of M.W. On another occasion, he asked to see her training bra, and when she showed him he started "grabbing" and "caressing" her breasts.

Appellant first put his fingers in M.W.'s vagina when she was ten. When M.W. told appellant that it hurt, he told her that "it won't hurt for too long," and that he was doing it to get her "ready." Appellant would ask M.W. things such as why she liked to be on top. One night, everyone in the family except M.W. and appellant went to the movies. When the family returned home and had gone to sleep, M.W. and appellant engaged in their "usual routine." But this time appellant got on top and M.W. could feel his penis penetrate her. He stopped before he ejaculated. Afterwards, M.W. simply got dressed and "went to bed."

Appellant penetrated M.W. with his penis "more than once," but "less than five times." He would rub M.W.'s vagina with his penis through the hole in his boxers, and he continued to penetrate her vagina with his fingers. Appellant also instructed M.W. about how to touch his penis.

The abuse ceased in 2003 when appellant got married. M.W. had no further contact with appellant other than a text message in which appellant inquired about M.W.'s sexual activity with others.

In 2006, M.W. told a church-camp counselor about the abuse, and the counselor told M.W. to tell her mother. M.W. did not tell her parents when she returned home from camp because she was afraid. The church-camp counselor testified that there was no way that she was going to step forward and tell anyone because appellant's father, Mr. Washburn, was a pastor at the church.

When she was fifteen years' old and a freshman in high school, M.W. finally told her parents. Her parents "brushed it off." When she was eighteen, M.W. told her mother she wanted to get some counseling. M.W.'s mother said, "Oh, this thing again."

M.W. met with a counselor in 2011, and the counselor reported the abuse. M.W. also told her sister, C.A., and her sister-in-law, and the three of them confronted appellant's father. C.A. accompanied M.W. when she reported the abuse to the Dallas Police Department. A detective interviewed M.W., the church-camp counselor, and another person from the church camp. The detective also met with appellant's father. Appellant was subsequently indicted. The indictment charged that on or about the first day of February, 2002, appellant sexually assaulted M.W. by causing the contact and penetration of her female sexual organ with his own, when M.W. was younger than fourteen years of age.

## ANALYSIS

Appellant raises four challenges to the admission of M.W.'s testimony concerning other crimes, wrongs, and bad acts. Appellant argues: (1) the trial court abused its discretion in admitting the testimony; (2) the trial court erred in failing to give a limiting instruction at the time of the testimony; (3) the trial court abused its discretion in refusing to conduct a Rule 403 balancing test; and (4) the trial court erred in refusing a limiting instruction in the charge. We begin our review with consideration of whether the evidence was properly admitted.

### *Admission of the Evidence.*

Appellant argues the trial court erred in admitting M.W.'s testimony about acts other than the charged offense. Specifically, appellant complains the trial court erred when it allowed M.W. to testify that appellant "rubbed or touched her breasts or vagina, penetrated her sexual organ with his fingers, masturbated in front of her, or committed any other crimes, wrongs, or acts other than the charged offense." Appellant contends this evidence was inadmissible under Rule 404(b) and was not same transaction contextual evidence. The State responds that appellant failed to preserve this issue for our review, but regardless, the evidence was admissible under article 38.37 of the code of criminal procedure.

We review the trial court's decision to admit the evidence for abuse of discretion.[1] If the trial court's ruling is within the zone of reasonable disagreement, there is no abuse of discretion.[2]

If a trial court's action is correct, although incorrect or insufficient reasons are given, no reversal will follow, especially with regard to the admission of evidence.[3] Here, we need not consider whether the trial court erred in admitting the evidence as same transaction contextual evidence because the evidence was admissible under article 38.37 of the code of criminal procedure.[4]

In sexual abuse cases involving minors, article 38.37 of the Texas Code of Criminal Procedure provides that evidence of crimes, wrongs, or acts committed by the defendant against a child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including the state of mind and previous relationship between the defendant and child.[5] Article 38.37 is an evidentiary rule and by its express terms supersedes in certain sexual abuse cases the application of Texas Rule of Evidence 404(b)[6]. Specifically, the statute provides:

> Notwithstanding Rules 404 and 405, Texas Rules of Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including:
>
> (1) The state of mind of the defendant and the child; and
>
> (2) The previous and subsequent relationship between the defendant and the child.[7]

---

[1] *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).

[2] *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009).

[3] *See McDuff v. State*, 939 S.W.2d 607, 619 (Tex. Crim. App. 1997).

[4] *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, §2 (West Supp. 2002) (version of statute in effect at time of offense). Current version at TEX. CODE CRIM. PROC. ANN. art. 38.37 (1) (b) (West Supp. 2013).

[5] TEX. CODE CRIM. PROC. ANN. art. 38.37; *see also Dixon v. State*, 201 S.W.3d 731, 734 (Tex. Crim. App. 2006) (stating appellant not entitled to be protected from admission of extraneous sexual offenses committed by him against child; article 38.37 permits admission of evidence of offenses to show previous and subsequent relationship between appellant and child victim).

[6] *See Hitt v. State*, 53 S.W.3d 697, 705 (Tex. App.—Austin 2001, pet. ref'd).

[7] TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2.

The complained-of testimony all described acts committed by appellant against M.W. prior and subsequent to the charged offense. M.W. described appellant's actions beginning when she was five years old and the family lived in Ferris and during the first six months the family lived in Dallas. M.W. testified that she and appellant got into bed "frequently," and that it became a "routine." Appellant encouraged M.W.'s sexual activity by making sexual comments and masturbating in front of her. Appellant got M.W. "ready" to have sex by penetrating her vagina with his fingers.

This testimony was relevant to the charged offense, and showed both the prior and subsequent relationship between M.W. and appellant as well as appellant's and M.W.'s state of mind. Consequently, the trial court did not abuse its discretion in allowing the testimony. Appellant's first issue is overruled.

### *Limiting Instructions.*

In his second and fourth issues, appellant asserts the trial court erred in refusing to give the jury limiting instructions, contemporaneously when the testimony was offered, and in the charge to the jury.

When the prosecutor asked M.W. the first thing she remembered happening with appellant when she was five, defense counsel objected, stating:

> I object as extraneous, ask the court for an instruction prior to them or at the time the– understand the court's ruling previously but I ask for an instruction at the time of the testimony.[8]

The trial judge overruled the objection and stated, "I'm not going to instruct the jury."

Appellant argues that the trial judge denied the request because he believed the testimony was same transaction contextual evidence. According to appellant, the evidence was not same

---

[8] The record does not reflect any "previous ruling" on this issue.

transaction contextual evidence and therefore the trial court was required to give a limiting instruction.

With regard to limiting instructions, Texas Rule of Evidence 105(a) provides that when "evidence which is admissible . . . for one purpose but not admissible . . . for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly."[9] "The language of Rule 105(a) requires, upon proper request, a limiting instruction to be given at the time the evidence is admitted."[10] However, the Texas Court of Criminal Appeals has held that "a limiting instruction is not required when evidence is admitted as same-transaction contextual evidence."[11]

When a party requests a limiting instruction, he must inform the trial court what limits must be placed on the evidence; otherwise, denial of the request has not been preserved for appellate review.[12] When appellant objected, he did not specify what limitations should be placed on the testimony. Indeed, appellant only objected to the question referenced above. There were no further objections or requests for an instruction for the remainder of M.W.'s testimony, nor was there a request for a running objection. Appellant's complaint about the lack of a contemporaneous instruction has not been preserved for our review.[13]

Appellant also requested a limiting instruction at the charge conference. The following exchange occurred:

---

[9] TEX. R. EVID. 105(a); *see Hammock v. State*, 46 S.W.3d 889, 892 (Tex. Crim. App. 2001).

[10] *Hammock v. State*, 46 S.W.3d 889,894 (Tex. Crim. App. 2001); *Rankin v. State*, 974 S.W.2d 707, 713 (Tex. Crim. App. 1996) (op. on orig. submission).

[11] *Devoe v. State,* 354 S.W.3d 457, 471 (Tex. Crim. App. 2011) (citing *Castaldo v. State*, 78 S.W.3d 345, 352 (Tex. Crim. App. 2002)).

[12] *See Wells v. State*, 241 S.W.3d 172, 179 (Tex. App.—Eastland 2007, pet. ref'd).

[13] *See* TEX. R. APP. P. 33.1.

COUNSEL: I believe we're entitled to get just a limiting instruction without the Court out loud stating what it went through in a 403, 404 balancing test. The Court's determined it's admissible for a limited purpose.

THE COURT: It wasn't a 403, 403 balancing test. It was that I decided that it was not 404(b) in the first place, that it was inextricably intertwined charged offense and res gestae. I could tell them that or I could tell them in the alternative, it goes to show the defendant's plan if you wanted me to do that but then I cautioned you that I didn't necessarily think that would be the most sagacious thing in the world.

COUNSEL: I certainly do not want you to state what you have just said now in front of the jury.

THE COURT: Right. You want me to just say that I think it's inextricably intertwined or you want to think about that over lunch?

COUNSEL: Let me think over lunch. Obviously we do not want the Court to express out loud any --

THE COURT: What exactly do you want me to tell them?

COUNSEL: That he is on trial for one offense. These other things are being offered for the purposes for which they are being offered to show his state of mind or relationship between the accused and the complainant and it's for that purpose only, not to show any other.

THE COURT: I decline to do that. Exactly the way I said it or not at all.

PROSECUTOR: I believe the language defense counsel is using is under 38.37 specifically.

THE COURT: I made my ruling. I think I know what I am doing. So that's that.

On appeal, appellant now complains that he was entitled to an instruction "in keeping with the dictates of article 38.37." But even if we were to construe the charge conference exchange as a sufficiently specific request for an instruction pursuant to 38.37, the request was not timely made because testimony had already been admitted without limitation.

An objection to the admission of evidence and the request for a limiting instruction must be made when the evidence is first introduced for a party to be entitled to a limiting instruction

regarding the proper use of the evidence.[14] Once the evidence has been admitted without a limiting instruction, it is part of the general evidence and may be used for all purposes.[15] As stated in *Hammock*:

> If the jury is required to consider evidence in a limited manner, then it must do so from the moment the evidence is admitted. Allowing the jury to consider evidence for all purposes and then telling them to consider that same evidence for a limited purpose only is asking a jury to do the impossible. If a limiting instruction is to be given, it must be when the evidence is admitted to be effective.[16]

When the evidence was first introduced at trial, appellant failed to request a specific instruction, and made no reference to article 38.37. When the court overruled appellant's objection, the evidence was admitted for all purposes. After all of the evidence had been presented to the jury, an instruction was not warranted. Therefore, the trial court did not err in refusing to include a limiting instruction in the charge to the jury. Appellant's second and fourth issues are overruled.

### *Rule 403 Balancing Test.*

In his third issue, appellant argues the trial court "refused" to conduct a Rule 403 balancing test. Rule 403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."[17] A party must make a specific objection based on Rule 403; a Rule 404(b) objection will not preserve a Rule 403 complaint.[18] But we find no Rule 403 objection in

---

[14] *Hammock,* 46 S.W.3d at 894.

[15] *Delgado v. State*, 235 S.W.3d 244, 251 (Tex. Crim. App. 2007).

[16] *Hammock,* 46 S.W.3d at 894.

[17] TEX. R. EVID. 403.

[18] *See Williams v. State*, 290 S.W.3d 407, 411 (Tex. App.—Amarillo 2009, no pet.) (citing *Montgomery v. State*, 810 S.W.2d 372, 388 (Tex. Crim. App. 1990)).

the record, and appellant has not cited to one. Therefore, the appellant's complaint has not been preserved for our review.[19] Appellant's third issue is overruled.

## CONCLUSION

Having resolved all of appellant's issues against him, we affirm the trial court's judgment.

/Kerry P. FitzGerald/

Do Not Publish                     KERRY P. FITZGERALD
TEX. R. APP. P. 46                 JUSTICE
130921F.U05

---

[19] *Id.*



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JOSHUA PAUL WASHBURN, Appellant

No. 05-13-00921-CR       V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 7, Dallas County, Texas
Trial Court Cause No. F-1161795-Y.
Opinion delivered by Justice FitzGerald.
Justices Moseley and O'Neill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered July 30, 2014