

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

___

No. 07-13-00292-CR

___

DANIEL MEDRANO, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

___

On Appeal from the 140th District Court
Lubbock County, Texas
Trial Court No. 2012-436,049; Honorable Jim Bob Darnell, Presiding

___

August 20, 2015

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

After a bench trial, the court convicted appellant Daniel Medrano of possession with intent to deliver a controlled substance (methamphetamine) in an amount of four grams or more but less than 200 grams.[1]  Appellant plead true to an enhancement paragraph and was punished by imposition of a sentence of sixty-five years'

___

[1] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d) (West 2010). An offense under this section is a first-degree felony.

confinement in prison.[2]  On appeal, appellant argues the evidence was insufficient to identify him as the person who possessed the contraband.  Disagreeing, we will affirm the judgment of the trial court.

Background

Shortly after 1:00 a.m. on August 14, 2012, a Lubbock police officer saw a small Suzuki SUV with a defective tail lamp operating on a public road.  He activated the lights of his patrol car and the Suzuki pulled to the side of the road.  Shining a spotlight on the vehicle, the officer saw only one occupant, the driver.  The officer noted the driver was "nervously looking back and forth" and the vehicle's brake lights remained on.  The officer's view of the driver was limited to the driver's reflection in the side rear-view mirror.  He described the driver to dispatch as a light-complected black or Hispanic male, possibly wearing a black hat or a black "do-rag."  As the officer watched, the vehicle moved forward a few feet.  A black object flew out the passenger-side window into an adjoining vacant lot.  The officer requested backup.  Then the Suzuki sped away.

The officer testified he turned on his siren and gave chase.  He said he obeyed stop signs but the Suzuki's driver did not, so he fell behind by about five to ten seconds.  At one point, the officer briefly lost sight of the vehicle.  He continued following its path and found it parked in a neighborhood.

---

[2] Based on appellant's prior felony conviction, the punishment range was enhanced to imprisonment for life or any term not more than 99 years or less than 15 years.  TEX. PENAL CODE ANN. § 12.42(c)(1) (West Supp. 2014).

The Suzuki was unoccupied but the keys were in the ignition. Other officers arrived and established a perimeter. In the vehicle, the officer found $133 in cash, a yellow sword, a glass smoking pipe with white burned residue, a small black air soft pistol, and two cell phones.

The officer requested that another officer retrieve the object tossed from the Suzuki. When he reached the scene of the initial stop, some residents from across the street were outside their homes. They pointed the second officer to an area some eight feet from the street. There the second officer found a black zipper pouch. The second officer was in the vicinity when he received the call and needed, according to his estimate, less than two minutes to reach the scene of the initial stop.

Meanwhile police contacted the registered owner of the Suzuki. He indicated his daughter Natalie Lemon drove the vehicle. When officers contacted Lemon she explained she allowed appellant to borrow the vehicle. Lemon denied placing the sword, air soft gun, pipe or the currency in the vehicle. She gave officers an address where appellant "was staying."

The address was a residence which, according to the officer, was some seventy-five to a hundred feet from the parked Suzuki. Angelica Gutierrez and her children lived there. Officers gained entrance to the residence. The officer testified Gutierrez told him appellant had arrived at the house shortly before police arrived. In a bedroom, officers found appellant in bed. He was removed from the residence and arrested on an outstanding parole-violation warrant.

At trial, Gutierrez testified she and appellant had a long-standing relationship which had been romantic. Contrary to the officer's testimony of her statements, she testified that on the night of appellant's arrest, he had been at her house for some time. He loaned the Suzuki to someone she knew only as "homeboy," and went to bed, telling Gutierrez to wake him when the borrower returned the Suzuki.

The pouch contained a substance that later proved to be methamphetamine with a net weight of 10.64 grams. It also held measuring spoons, cotton swabs, and a digital scale with residue. Officers also found in the pouch a cellphone payment receipt containing appellant's name and an address and telephone number, as well as the operator's manual for an iPhone 4.

At trial, appellant testified and agreed the black pouch was his. He used it, he said, to carry a razor and blades. He further agreed the iPhone manual belonged to him and the receipt "probably" was his. Appellant testified that although he was married, he lived with Gutierrez at the time of his arrest. Like Gutierrez, he told the court he loaned the Suzuki to another person, whom he identified as his neighbor "Josh." Despite knowing Josh for "about four or five years" and knowing his phone number by memory, appellant did not know Josh's last name.

Several of appellant's recorded jail telephone conversations were played for the court. In one, appellant told a female, "They found the black thing, and inside had a receipt that had my phone bill on it." Appellant stated in another call, "They found that thing and charged me with everything that was in it."

4

According to a testifying narcotics detective, the quantity of methamphetamine found in the pouch was consistent with that of a street dealer. He further explained that "in the world of methamphetamines" knives are more common than guns and air soft pistols are used "for show."

The court found appellant guilty and imposed the noted sentence after a punishment hearing.

Analysis

Through two issues, which we discuss jointly, appellant contends the evidence was insufficient to prove he possessed the contraband. Appellant divides his argument between contentions the proof he was the Suzuki's driver was insufficient, and that proof linking him to the contraband found in the black pouch also was insufficient. The key to the sufficiency argument, however, is the evidence appellant was the driver, because he does not contest that the Suzuki's driver was linked to the contraband.

We apply the same standard of review in bench trials as in jury trials. *Grant v. State,* 989 S.W.2d 428, 432 (Tex. App.—Houston [14th Dist.] 1999, no pet.). "In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt." *Gear v. State,* 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia,* 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). "[T]he relevant question is whether, after viewing the evidence in the light

5

most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson,* 443 U.S. at 319 (emphasis in original). A reviewing court "determine[s] whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State,* 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). In the face of conflicting inferences, a reviewing court presumes the factfinder resolved the conflicts in favor of the prosecution and therefore defers to that determination. *Jackson,* 443 U.S. at 326. We "defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Brooks v. State,* 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (citing *Jackson*, 443 U.S. at 319, 326). As such, the factfinder is free to believe all, some, or none of the testimony presented by the parties. *Chambers v. State,* 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); *Williams v. State,* 290 S.W.3d 407, 412 (Tex. App.—Amarillo 2009, no pet.). "It is not necessary that the evidence directly proves the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone may be sufficient to establish guilt." *Carrizales v. State,* 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper,* 214 S.W.3d at 13). It is the State's burden to prove each element of the offense beyond a reasonable doubt, not to exclude every conceivable alternative to a defendant's guilt. *Turro v. State,* 867 S.W.2d 43, 47 (Tex. Crim. App. 1993) (explaining

6

that "the evidence is not rendered insufficient simply because appellant presented a different version of the events").

A person commits an offense if he knowingly possesses with intent to deliver a controlled substance in an amount four grams or more but less than 200 grams. TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d) (West 2010). Possession means "actual care, custody, control, or management." TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (West Supp. 2014); TEX. PENAL CODE ANN. § 1.07(a)(39) (West Supp. 2014).

Appellant points to pieces of evidence that, he contends, preclude a finding of guilt on the identity issue. The officer agreed that at the traffic stop he "never really got a good look at who was driving" the Suzuki. The best description the officer could give of the vehicle's driver was "a light-complected black or light-complected Hispanic male, possibly wearing a black hat or a black do-rag."

According to Lemon, when police contacted her, they said they sought a heavyset Hispanic male. Appellant testified his neighbor Josh is a "light-complected, bigger guy." He is Hispanic and sometimes wears do-rags. Appellant was not heavy set and never wore do-rags. Gutierrez testified appellant loaned the Suzuki to someone she knew as "homeboy." Appellant denied possession of the methamphetamine, spoons, scale, the sword, the air soft pistol, and the money. He denied being in the vehicle during the chase. Appellant further contends evidence of guilt is weakened because police did not find a hat or do-rag in his possession, his fingerprints did not appear on the pouch or its contents, the drug dog police brought to the scene showed

7

no interest in appellant, and the evidence shows no connection between appellant and the two cellphones found in the Suzuki.

Appellant cites cases addressing the sufficiency of evidence showing possession of contraband.[3] All the cases he cites are distinguishable on their facts from this case. And none are helpful to our analysis because the determinative question in this case is whether appellant was the driver of the Suzuki.

Under the *Jackson* standard, the evidence was sufficient to permit the trial court as finder of fact reasonably to find appellant was the driver of the Suzuki. *Jackson,* 443 U.S. at 319. Appellant, Gutierrez and Lemon all testified he borrowed the vehicle from Lemon. Appellant acknowledged he owned the black pouch thrown from the vehicle during the attempted traffic stop and found minutes later at that location. Although the pursuing officer briefly lost sight of the Suzuki, he shortly located it near Gutierrez's house. This was the address where Lemon said appellant "was staying," where appellant testified he was living, and where appellant was found shortly after the chase ended. The trial court was free to believe the officer's version of the conversation with Gutierrez rather than the version of events to which Gutierrez testified. By the officer's testimony, Gutierrez that night indicated appellant had just arrived at the house. The court also was free to reject appellant's and Gutierrez's testimony that he loaned Lemon's Suzuki to the mysterious "Josh" or "homeboy." Likewise, the State was not obligated to negate the other hypothesis to which appellant refers on appeal, which

---

[3] Appellant relies on *Nguyen v. State,* 54 S.W.3d 49, 51 (Tex. App.—Texarkana 2001, pet. refused), *overruled on other grounds by Fagan v. State,* 362 S.W.3d 796 (Tex. App.—Texarkana 2012, pet. refused); *Kyte v. State,* 944 S.W.2d 29, 32 (Tex. App.—Texarkana 1997, no pet.); and *Collins v. State,* 901 S.W.2d 503, 506 (Tex. App.—Waco 1994, pet. refused).

effectively would have required the court to believe that a bystander found appellant's pouch lying near the street and, for reasons unclear, put into it a large quantity of methamphetamine, spoons, and a scale with residue.

Finding the evidence sufficient to establish appellant drove the Suzuki and possessed the methamphetamine and other contraband, we overrule appellant's two issues on appeal.

## Conclusion

We affirm the judgment of the trial court.

James T. Campbell
Justice

Do not publish.