

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-13-00319-CR
_____

DUSTIN RYAN RHOADES, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 320th District Court
Potter County, Texas
Trial Court No. 65,540-D, Honorable Don R. Emerson, Presiding

September 15, 2015

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

A jury convicted appellant Dustin Ryan Rhodes of murder and assessed punishment, enhanced, at forty years' confinement in prison.[1] The trial court imposed sentence accordingly. Appellant challenges his conviction through four issues. Three seek rendition of a judgment of acquittal and the fourth, a new trial. We will affirm the judgment of the trial court.

---

[1] *See* TEX. PENAL CODE ANN. § 19.02(b) (West 2011) (murder); § 12.42(c)(1) (West Supp. 2014) (enhancing minimum term of confinement for first degree felony to fifteen years).

## Background

Around midnight on June 7, 2012, Deans Anderson was found shot to death just inside his Amarillo apartment. Another resident of the complex had called 911 after he heard a gunshot and watched a man and woman run to a red minivan. The man carried a "small black pistol." From Anderson's cellphone a police detective obtained information that led officers, through an undercover investigation, to Cree-Anna Shamell Dawn, a participant in an escort service. Dawn had accompanied appellant to the door of Anderson's apartment on the night of his death. She identified appellant as Anderson's shooter.

Questioned by police, appellant gave a voluntary written statement. According to his statement, appellant had been acquainted with Dawn for a short time. On June 7, she called appellant to tell him a man attempted to rape her and took her money. She enlisted appellant's help to recover the money. Using a minivan belonging to his girlfriend Kristie Ortiz, appellant drove Dawn to the apartment complex and followed her to Anderson's apartment. Appellant held his .357 revolver in his hand. Anderson opened the apartment door after Dawn knocked. Anderson spoke to Dawn. Appellant then stepped up to the door, pointed the gun at Anderson and demanded he give Dawn the money and empty his pockets. The men exchanged words and Anderson stepped toward appellant. The statement continued, "I twisted and pulled the trigger. I didn't mean to. The shot hit the man in the face. I was sorry and wanted so bad to help him." Appellant and Dawn ran to the minivan and left the complex. A few days later, his statement said, appellant sold the gun to an unidentified man along a north Amarillo street.

2

Appellant was charged by indictment with Anderson's murder. Appellant's written statement was admitted into evidence at trial. Ortiz testified, telling the jury that a few days after the occurrence appellant told her he pulled the gun on Anderson to scare him and Dawn "pulled his arm away to quit, and then the gun went off." Ortiz acknowledged she did not recount this version of the occurrence in a June 12 written statement to police.

A pathologist testified to his autopsy of Anderson's body, and expressed the opinion the cause of death was a gunshot wound to the head.

Appellant did not testify. He was convicted and sentenced as noted.

Analysis

By his first, third, and fourth issues appellant seeks rendition of a judgment of acquittal. He requests reversal and remand in his second issue. We will first consider appellant's three rendition issues.

Sufficiency of the Evidence

In his first issue, appellant asserts the evidence was insufficient to prove he intentionally or knowingly murdered Anderson because the firearm discharged as a result of an "involuntary reflex."

We evaluate the sufficiency of evidence supporting criminal convictions under the standard set forth in *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L. Ed. 2d 560 (1979); *Brooks v. State,* 323 S.W.3d 893, 894-95 (Tex. Crim. App. 2010). That standard requires that we view all evidence in the light most favorable to the verdict and

determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Salinas v. State,* 163 S.W.3d 734, 737 (Tex. Crim. App. 2005). As fact finder, the jury is the sole judge of the credibility of the witnesses and may choose to believe all, some, or none of the testimony the parties presented. *Lancon v. State,* 253 S.W.3d 699, 707 (Tex. Crim. App. 2008); *Chambers v. State,* 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); *Williams v. State,* 290 S.W.3d 407, 412 (Tex. App.—Amarillo 2009, no pet.).

The State's indictment charged appellant with murder under two theories, that he intentionally and knowingly caused Anderson's death by shooting him with a firearm; and that he committed or attempted to commit a felony, deadly conduct, and in the course of it committed or attempted to commit an act clearly dangerous to human life, pointing a firearm at or in Anderson's direction, that caused Anderson's death. *See* Tex. Penal Code Ann. § 19.02(b)(1), (b)(3) (West 2011).

Under Penal Code section 19.02(b)(1), a person commits murder if he intentionally or knowingly causes the death of an individual. Tex. Penal Code Ann. § 19.02(b)(1). Section 19.02(b)(3) is the "felony murder" provision. Tex. Penal Code Ann. § 19.02(b)(3). Essentially, felony murder is, "an unintentional murder committed in the course of committing a felony." *Rodriguez v. State,* 454 S.W.3d 503, 508 (Tex. Crim. App. 2014) (citing *Fuentes v. State,* 991 S.W.2d 267, 272 (Tex. Crim. App. 1999)). Specifically, felony murder is committed where a person "commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt . . . he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual." *Id.* (quoting Penal

4

Code section 19.02(b)(3)). A person commits the offense of deadly conduct if he "knowingly discharges a firearm at or in the direction of . . . one or more individuals." TEX. PENAL CODE ANN. § 22.05(b) (West 2011). Deadly conduct may serve as the underlying felony for proof of felony murder. *Washington v. State,* 417 S.W.3d 713, 721 (Tex. App.—Houston [14th Dist.] 2013, pet. refused); *Miles v. State,* 259 S.W.3d 240, 247 (Tex. App.—Texarkana 2008, pet. refused).

A person acts intentionally with respect to a result of his conduct when "it is his conscious objective or desire to engage in the conduct or cause the result." TEX. PENAL CODE ANN. § 6.03(a) (West 2011). A person acts knowingly with respect to a result of his conduct when "he is aware that his conduct is reasonably certain to cause the result." TEX. PENAL CODE ANN. § 6.03(b).

The court's charge authorized conviction under either of the State's theories of guilt, and from our review of the record we find the evidence sufficient to permit conviction under either theory. By appellant's statement, he pointed the .357 revolver at Anderson and told him to give Dawn the money and empty his pockets. When Anderson stepped toward him, appellant "twisted and pulled the trigger." In its role as trier of fact, the jury was entitled to accept appellant's statement at face value. From his conduct of pointing the revolver at Anderson at close range and pulling the trigger, and despite appellant's assertion he did not "mean to," the jury was further entitled to infer appellant intended the natural and usual consequence of such an action, the death of Anderson. *Guevara v. State,* 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) ("Intent may also be inferred from circumstantial evidence such as acts, words, and the conduct" of the accused). The jury also could have concluded appellant's actions were

5

accompanied by the knowledge that they were reasonably certain to cause Anderson's death, even if appellant did not intend it. Either mental state authorizes conviction for murder.

The jury was equally entitled to disbelieve Ortiz's version which included appellant's statement the gun discharged when Dawn pulled his arm away. Ortiz made no mention of Dawn pulling appellant's arm in her written statement given some eight days after the shooting. Rather, she first mentioned this version in January 2013 during a conversation with the prosecutor and an investigator.

Appellant's written statement also provided evidence permitting a rational jury to conclude beyond reasonable doubt that appellant knowingly discharged a firearm at or in Anderson's direction, that doing so was clearly dangerous to human life and that it caused Anderson's death. *See* TEX. PENAL CODE ANN. § 22.05(b).

Because, viewed in the light most favorable to the verdict, the record contains evidence from which jurors rationally could have found all elements of the offense of murder, the evidence is sufficient. Appellant's first issue is overruled.

Motion to Quash Paragraph Two of the Indictment

By his third issue, appellant argues the trial court erred in refusing to quash paragraph two of the indictment. As we understand appellant's argument here, he contends paragraph two of the indictment did not properly allege felony murder because as worded it alleged only the misdemeanor level of deadly conduct.

The second paragraph of the indictment read:

AND THE GRAND JURORS do further present in and to the Court that . . . DUSTIN RYAN RHOADES, the defendant, on or about the 7th day of June, 2012 did then and there intentionally or knowingly commit or attempt to commit an act clearly dangerous to human life, to-wit: pointing a firearm at or in the direction of Deans Anderson, that caused the death of Deans Anderson, and the Defendant was then and there in the course of intentionally or knowingly committing a felony, to-wit: Deadly Conduct, and said death of Deans Anderson was caused while the Defendant was in the course of and in furtherance of the commission or attempt of said felony.

In his pretrial motion to quash appellant asserted, "As alleged, Deadly Conduct is an act Reckless in its level of culpability, and is therefore a lesser included offense of Manslaughter, and cannot therefore be charged as Murder against Defendant Dustin Ryan Rhoades." After a brief hearing on the morning of trial, the motion was denied.

The sufficiency of a charging instrument presents a question of law. *Smith v. State,* 309 S.W.3d 10, 13 (Tex. Crim. App. 2010). An appellate court reviews a trial judge's ruling on a motion to quash a charging instrument *de novo. Id.* at 14.

As applicable here, a person commits the offense of murder if he commits a felony, other than manslaughter, and in the course of and in furtherance of the commission he commits an act clearly dangerous to human life that causes the death of an individual. *See* TEX. PENAL CODE ANN. § 19.02(b).

Penal Code section 22.05 contains misdemeanor and felony categories of the offense of deadly conduct. *See* TEX. PENAL CODE ANN. § 22.05. First, the offense is committed if a person "recklessly engages in conduct that places another in imminent danger of serious bodily injury." TEX. PENAL CODE ANN. § 22.05(a). This is a Class A misdemeanor. TEX. PENAL CODE ANN. § 22.05(e). Second, a person commits the offense of deadly conduct if he "knowingly discharges a firearm at or in the direction

of . . . one or more individuals." TEX. PENAL CODE ANN. § 22.05(b). This is a third-degree felony. TEX. PENAL CODE ANN. § 22.05(e). Thus the felony category of deadly conduct is committed only by knowingly discharging a firearm.

Section 22.05(c) states that "recklessness and danger are presumed if the actor knowingly pointed a firearm at or in the direction of another . . . ." TEX. PENAL CODE ANN. § 22.05(c). Those concepts, recklessness and danger, have application only to the misdemeanor category of deadly conduct. *See* TEX. PENAL CODE ANN. § 22.05(a). But paragraph two of the indictment alleged that appellant pointed a firearm at or in the direction of Anderson.

Perhaps because, and as the State concedes, paragraph two of the indictment "could have been more artfully drawn," appellant confuses the elements of the required underlying felony with the "act clearly dangerous to human life" requirement contained in the felony murder provision of section 19.02(b)(3). It was to satisfy that requirement that paragraph two contains the allegation appellant pointed a firearm.

It now appears "well established under Texas law that deadly conduct can be the underlying felony for felony murder." *Washington,* 417 S.W.3d at 721 (citing *Miles,* 259 S.W.3d at 247; *Yandell v. State,* 46 S.W.3d 357, 361 (Tex. App.—Austin 2001, pet. refused); *Rodriguez v. State,* 953 S.W.2d 342, 354 (Tex. App.—Austin 1997, pet. refused*), cited with approval in Lawson v. State,* 64 S.W.3d 396, 401 (Tex. Crim. App. 2001) (Cochran, J., concurring)). The culpable mental state for felony deadly conduct is knowingly, which precludes the offense from being a lesser-included offense of manslaughter which requires only the less culpable mental state of recklessness. *See*

*Washington,* 417 S.W.3d at 721-22 (citing *Yandell,* 46 S.W.3d at 361).  Finally, the underlying felony necessary for proving the offense of felony murder, so long as it is not manslaughter, may also serve as the act clearly dangerous to human life that causes the death of an individual.  *See Johnson v. State,* 4 S.W.3d 254, 258 (Tex. Crim. App. 1999) (disavowing the "overly broad statement in *Garrett v. State,* 573 S.W.2d 543, 546 (Tex. Crim. App. [Panel Op.] 1978), that in order to support a conviction under the felony murder provision, '[t]here must be a showing of felonious criminal conduct other than the assault causing the homicide'" and holding the only limitation by merger on the offense of felony murder is a conviction "will not lie when the underlying felony is manslaughter or a lesser included offense of manslaughter").  We find no error by the trial court in denying appellant's motion to quash.  Appellant's third issue is overruled.

Standing

Appellant argues in his fourth issue that police learned his identity, and as a result later obtained his written statement, through the means of unlawful activity, a violation of the prostitution statute.[2]  Therefore, he urges, the trial court erred by failing to suppress identification evidence and his written statement.

As noted, police discovered a recent contact on Anderson's cellphone.  Following up, they linked the call to a person working in an "escort service" under the alias "Chocolate Cherry."  Officers set up an undercover prostitution investigation of this person and arranged a meeting with her.  During a hearing outside the presence of the jury, a detective testified at the meeting an offer of sex for money was made and

_____

[2] *See* TEX. PENAL CODE ANN. § 43.02 (West Supp. 2014) (offense of prostitution).

9

accepted. As a result, Chocolate Cherry was arrested. She was then identified as Dawn. Further investigation based on information Dawn provided led to a second interview, in which Dawn told the detective she and appellant were at the door of Anderson's apartment, appellant held a gun in his hand, he pointed the gun at Anderson, and she ran while appellant remained at the door with the gun. As she ran she heard a gunshot. Appellant thus asserts his identification as a suspect resulted from the initial undercover conversation with Dawn, in which an officer participated in the agreement for sex for money.[3]

Code of Criminal Procedure article 38.23(a) states, "No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2005). Article 38.23 protects "a suspect's privacy, property, and liberty rights against overzealous law enforcement." *Wilson v. State,* 311 S.W.3d 452, 459 (Tex. Crim. App. 2010). It is substantive in nature, providing a remedy for a violation of those rights. *Id.* But a defendant has no standing to complain about evidence seized in violation of Texas law unless the defendant's rights were invaded by the seizure. *Chavez v. State,* 9 S.W.3d 817, 819 (Tex. Crim. App. 2000) (citing *Fuller v. State,* 829 S.W.2d 191, 201-02 (Tex. Crim. App. 1992), *overruled on other grounds by*

---

[3] Some penal statutes contain exceptions allowing law enforcement agents to engage in conduct that otherwise would be criminal. *See, e.g.,* TEX. HEALTH & SAFETY CODE ANN. § 481.062(a)(4) (West 2010); *Wilson v. State,* 311 S.W.3d 452, 463 (Tex. Crim. App. 2010) ("The Texas Legislature specifically exempted police officers who are acting in their official capacity from liability for the penal offense of possession of a controlled substance"). Appellant points out the prostitution statute contains no similar exception.

*Riley v. State,* 889 S.W.2d 290 (Tex. Crim. App. 1994)). We find appellant has no standing to complain that the officer violated the prostitution statute.

*Fuller* is instructive here. While detained in the county jail the defendant in *Fuller* made an audio recording and gave it to a fellow prisoner, Hall. 829 S.W.2d at 201. Another prisoner took the recording from Hall and delivered it to jail authorities. *Id.* The trial court admitted the recording into evidence at the punishment phase of the defendant's capital murder trial to show his lack of remorse. *Id.* The defendant argued the recording should have been suppressed under article 38.23(a) because it was illegally taken from Hall. *Id.* The State countered that the defendant had no standing to contest the evidence. The court agreed, concluding the defendant lacked standing "to challenge such illegality in the context of a criminal prosecution." *Id.* at 202. It explained that despite its broad language, article 38.23(a) does not "confer automatic third party standing upon all persons accused of crimes, such that they may complain about the receipt of evidence which was obtained by violation of the rights of others, no matter how remote in interest from themselves." *Id.*

Thus under the facts of *Fuller:*

The justiciable injury suffered as a direct and immediate result of the illegality of which [the defendant] here complains was not his own. The illegality, if any, was theft or conversion. The victim, if any, was [Hall]. [She] may have a cognizable cause of action for conversion against someone. The State of Texas may have a basis to prosecute someone for the criminal offense committed against [Hall]. But no one may sue, nor may the State of Texas prosecute, anyone for an injury to the [defendant] arising from the illegality about which he now complains, since he suffered no injury actionable under our law as a result of it. No actionable wrong was visited upon [the defendant] as a result of the seizure. For this reason we hold that he is also without standing to challenge such illegality in the context of a criminal prosecution . . . .

829 S.W.2d at 202.

In like manner, appellant does not explain how the undercover operation that resulted in Dawn's arrest for prostitution invaded his rights with respect to the charge of murdering Anderson. *See Gower v. State,* No. 02-10-00362-CR, 2011, Tex. App. LEXIS 8185, at *19-25 (Tex. App.—Fort Worth Oct. 13, 2011, no pet.) (mem. op., not designated for publication) (holding defendant lacked standing to complain under article 38.23(a) of evidence obtained from deputy medical examiner, allegedly acting in violation of Code of Criminal Procedure article 49.25 (a Class B misdemeanor), when defendant failed to identify a violation of his own rights resulting from the alleged violation); *Orr v. State,* 306 S.W.3d 380, 400 (Tex. App.—Fort Worth 2010, no pet.) (holding defendant had no standing to complain that testimony of unlicensed fire investigator should have been struck under article 38.23(a) when defendant did not allege a violation of her rights related to the investigator's alleged violation of law); *State v. Tyson,* 919 S.W.2d 900, 903 (Tex. App.—Eastland 1996, pet. refused) (finding defendant had no standing to complain under article 38.23 of evidence agents obtained through allegedly unlawful purchase of alcoholic beverages by cooperating minor as none of defendant's rights were violated by the transaction); *Stockton v. State,* 756 S.W.2d 873, 874 (Tex. App.—Austin 1988, no pet.) (finding evidence obtained by an undercover narcotics officer enrolled in high school, allegedly in violation of the Texas Education Code, was not subject to exclusion under article 38.23); *see also Andrews v. State,* 164 Tex. Crim. 1, 3, 296 S.W.2d 275, 276 (1956) (overruling a defendant's contention that testimony from a physician was inadmissible because the physician conducted a vaginal examination of a rape victim while not licensed to practice). Thus

appellant has no standing to complain, under article 38.23, of the admission of the challenged evidence. Appellant's fourth issue is overruled.

Failure to Instruct on Voluntariness

By his second issue appellant complains the trial court erred by refusing to submit a requested instruction on voluntariness. Appellant's proposed instruction provided:

> You are instructed that a person commits an offense only if he voluntarily engages in conduct, including an act, omission, or possession. Conduct is not rendered involuntary merely because the person did not intend the results of his conduct.
>
> You are instructed that it is your duty to consider the evidence of all relevant facts and circumstances surrounding the alleged shooting of Deans Anderson and the previous relationship existing between the accused and the deceased, if any, including by way of any third party, together with all relevant facts and circumstances going to show the condition of the mind of defendant Dustin Ryan Rhoades at the time of the alleged shooting, and you should place yourselves in the position of defendant Dustin Ryan Rhoades at the time in question and view the circumstances from his viewpoint alone.
>
> Thus, if you believe from the evidence beyond a reasonable doubt that on the occasion in question the defendant, Dustin Ryan Rhoades, did cause the death of Deans Anderson by shooting him with a gun, as alleged in the indictment, but you further believe from the evidence, or you have a reasonable doubt thereof, that the shooting was a result of an accidental discharge of the gun and was not the voluntary act or conduct of the defendant, you will acquit the defendant and say by your verdict "Not Guilty."

The court denied the requested instruction.

"When a defensive theory is raised by evidence from any source and a charge is properly requested, it must be submitted to the jury." *Woodfox v. State,* 742 S.W.2d 408, 409 (Tex. Crim. App. 1987) (quoting *Gavia v. State,* 488 S.W.2d 420, 421 (Tex.

13

Crim. App. 1972)). A trial court must submit an instruction on every defensive issue raised by the evidence, "regardless of whether the evidence is strong, feeble, unimpeached, or contradicted, and even when the trial court thinks that the testimony is not worthy of belief." *Rogers v. State,* 105 S.W.3d 630, 637 (Tex. Crim. App. 2003) (concerning voluntariness of conduct as defensive issue). The evidence must support a rational jury finding on each element of the defense. *Shaw v. State,* 243 S.W.3d 647, 658 (Tex. Crim. App. 2007).

"A person commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession." TEX. PENAL CODE ANN. § 6.01(a) (West 2011). "Voluntariness," as applied by section 6.01(a), refers only to one's own physical body movements. *Rogers,* 105 S.W.3d at 638 (citing *Rashann Maurice Brown v. State,* 89 S.W.3d 630, 633 (Tex. Crim. App. 2002)). "If those physical movements are the nonvolitional result of someone else's act, are set in motion by some independent non-human force, are caused by a physical reflex or convulsion, or are the product of unconsciousness, hypnosis or other nonvolitional impetus, that movement is not voluntary." *Id.* (citing Tex. Penal Code § 6.01, Practice Commentary).

> [B]efore criminal responsibility may be imposed, the actor's conduct must "include[ ] either a voluntary act or an omission when the defendant was capable of action." The operative word under Section 6.01(a), for present purposes, is "include." Both the Model Penal Code comments and the Practice Commentary to the 1974 Texas Penal Code stress that the "voluntary act" requirement does not necessarily go to the ultimate act (e.g., pulling the trigger), but only that criminal responsibility for the harm must "include an act" that is voluntary (e.g., pulling the gun, pointing the gun, or cocking the hammer).

*Farmer v. State,* 411 S.W.3d 901, 905-06 (Tex. Crim. App. 2013) (quoting *Rogers,* 105 S.W.3d at 638).

Here, according to appellant, he armed himself with a .357 revolver which he carried in his hand as he and Dawn approached Anderson's apartment door. Appellant stepped up to the door with his gun pointed at Anderson and demanded money. Based on appellant's own version of the occurrence he voluntarily engaged in an act leading to the shooting of Anderson. That is, he carried his loaded revolver and pointed it at Anderson. No evidence suggests those actions were involuntary. "All that is necessary to satisfy Section 6.01(a) of the Texas Penal Code is that the commission of the offense *included* a voluntary act." *Farmer,* 411 S.W.3d at 907 (emphasis in original). Therefore, the trial court did not err by refusing appellant's request for a voluntariness instruction. *See George v. State,* 681 S.W.2d 43 (Tex. Crim. App. 1984) (finding a person "voluntarily engages in conduct when the conduct *includes, inter alia,* a voluntary act and its accompanying mental state. That such conduct also includes an involuntary act does not necessarily render engaging in that conduct involuntary" (footnote omitted, emphasis in original)); *Conroy v. State,* 843 S.W.2d 67, 72 (Tex. App.—Houston [1st Dist.] 1992, no pet.) ("Even assuming that the discharge of the weapon was unintended, the intentional pointing of a weapon is a voluntary act and the resulting death is imputable to the [defendant]"); *Arroyo v. State,* No. C14-92-00540-CR, 1994 Tex. App. LEXIS 459, at *11 (Tex. App.—Houston [14th Dist.] Mar. 10, 1994, no pet.) (not designated for publication) (explaining instruction on voluntariness not required if defendant engaged in single voluntary act and required mental state even though involuntary act may also have constituted part of overall act). *Cf. Farmer,* 411 S.W.3d at 906 ("Thus, a voluntary act that comprised a portion of the commission of the offense

15

is sufficient to satisfy the requirement of Section 6.01(a), even if that voluntary act was accidental or the consequences of that act were unintended").

Appellant's second issue is overruled.

## Conclusion

Having overruled each of appellant's issues, we affirm the judgment of the trial court.

James T. Campbell
Justice

Do not publish.

Pirtle, J., concurring.